394 So.2d 1197 (1981)
STATE of Louisiana
v.
Lloyd JAMES, Jr.
No. 65583.
Supreme Court of Louisiana.
January 26, 1981.
Rehearing Denied March 20, 1981.
*1198 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, John H. Craft, Asst. Dist. Attys., for plaintiff-appellee.
William J. O'Hara, III, New Orleans, Loyola Law School Clinic, for defendant-appellant.
GUIDRY, Justice Ad Hoc.[*]
Defendant, Lloyd James, Jr., was charged with the crime of aggravated rape, a violation of R.S. 14:42. A twelve-member jury found the defendant guilty as charged. Following his conviction, the defendant was adjudged a third offender under the provisions of the Louisiana Habitual Offender Law, La.R.S. 15:529.1, and as such, sentenced to imprisonment at hard labor for a term of forty years. The defendant assigns four errors for reversal of his conviction and sentence.

FACTS
On November 15, 1971 at approximately 1:30 A.M., Sara Spottswood was beaten, robbed, and raped in her New Orleans apartment by a knife-wielding assailant who was later positively identified as the defendant, Lloyd James, Jr. Police investigating the offense apprehended the defendant on the apartment complex premises later that same evening. On December 3, 1971, a bill of indictment was returned *1199 charging the defendant with aggravated rape. Shortly thereafter, the defendant escaped from legal custody.
In January, 1973, the defendant was arrested in Illinois for a murder allegedly committed in that state on December 18, 1972. Subsequent to his arrest in Illinois, the defendant underwent psychiatric examinations and was determined unfit to stand trial on that state's murder charge. Defendant remained incarcerated in Illinois where he regularly underwent psychiatric evaluation to determine his fitness for trial. On October 30, 1975, physicians in Illinois concluded that the defendant's schizophrenia was in partial remission and that the accused was competent to stand trial. Presumably, defendant's murder trial was conducted shortly thereafter.
Defendant was returned to Louisiana pursuant to extradition procedures some time in early 1976. Following his return to this state, a new bill of indictment was returned again charging the accused with aggravated rape of Sara Spottswood. Subsequently, the defendant was arraigned and entered a plea of not guilty and not guilty by reason of insanity.
Defendant's appointed counsel, Mr. Robert Zibilich, thereafter filed a motion requesting the appointment of a sanity commission to examine the accused. Pursuant to this request, the court appointed Drs. Albert Fant and Ignacio Medina to examine the defendant and determine whether or not he was competent to stand trial. Both physicians examined the accused and concluded that he was competent and able to proceed with his trial. Trial was then set for January 20, 1977.
Prior to trial, Mr. Zibilich was discharged as defendant's attorney when the accused retained Mr. Edward Haggerty to represent him. At Mr. Haggerty's behest, defendant's trial was continued without date. In July of 1977, Mr. Haggerty was permitted to withdraw from the case due to defendant's failure to pay certain legal fees. Additional changes in counsel occurred subsequent to Mr. Haggerty's withdrawal. Ultimately, defendant's representation was undertaken by the Loyola Law Clinic. With each change in defense counsel, the pleading process was essentially begun anew, thus, various defense motions delayed the defendant's trial until September 19, 1978.
On September 18, 1978, the day prior to trial, defense counsel filed a motion to quash the indictment alleging that the state failed to expeditiously bring this matter to trial and that such failure precluded defense experts from reconstructing the accused's mental state at the time of the commission of the offense. The trial judge refused to consider this motion and the trial of the case began as scheduled on the following day.
During the course of the trial, the defendant made no attempt to deny responsibility for the rape of the victim but rather urged insanity in defense. After evidence was presented, the jury returned a unanimous verdict of guilty as charged.

ASSIGNMENTS OF ERROR NUMBERS 1 AND 4
Defendant contends that the trial court erred in denying his motion to quash the indictment and his motion in arrest of judgment both grounded upon the alleged violation of defendant's Federal and State Constitutional right to a speedy trial. In addition, defendant claims in brief to this court that during this delay, prescription ran on the State's prosecution against him.[1]
Defendant avers that he was not tried until seven years after the commission of the offense and that such delay prevented him from proving his defense of insanity. Defendant concedes that he escaped shortly after his arrest in Louisiana, however he contends that Louisiana authorities were notified regarding his whereabouts shortly after his arrest in Illinois yet failed to initiate *1200 measures reasonably calculated to return the accused to Louisiana for trial on the aggravated rape charge thereby delaying his trial for five years.
Flexibility is the governing philosophy in determining whether or not delay constitutes a denial of the right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In Barker, supra, the Court rejected what is described as "inflexible approaches," i. e., imposing specific time limitations, in favor of a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." The Court listed the following four factors to be considered in each particular case: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right, and, (4) prejudice to the defendant, such as the possible impairment of the presentation of the accused's defense. This court has adhered to the Barker analysis in evaluating Louisiana's speedy trial claims. La.Const.1974, Art. I, Sec. 16; La.C.Cr.P. Art. 701; State v. Alfred, 337 So.2d 1049, 1058 (La.1976); State v. Reaves, 376 So.2d 136 (La.1979). We consider defendant's contentions in light of these guidelines.
There is no question but that the delay in the instant case, on its face, appears to be clearly inordinate. However, as previously noted under Barker, supra, the inquiry into whether a defendant's constitutional right to a speedy trial has been violated does not end with such finding. Further, as we stated in State v. Reaves, supra, "The peculiar circumstances of the case will determine the weight to be ascribed to the length of the delay and the reason for the delay."
The next factor to be considered in the speedy trial analysis is the reason for the delay. Clearly the state cannot be charged with responsibility for any delay caused by the defendant's own actions in escaping from the custody of Louisiana authorities. As previously noted, the defendant escaped from custody almost immediately following his indictment and was not returned to Louisiana until early 1976. Although, in brief, defendant suggests that Louisiana authorities were notified of his whereabouts promptly after his arrest in Illinois, the record contains no information whatever revealing the circumstances surrounding the defendant's extradition to Louisiana, specifically when Louisiana was first notified of the defendant's arrest in the State of Illinois and/or what efforts were made by the Louisiana authorities as well as any difficulties encountered by Louisiana officials during the extradition process. Further, it clearly appears from the record that once the defendant was returned to Louisiana for trial, all subsequent delays (a period of almost 2½ years) are solely attributable to the defendant. As we previously indicated, several changes in defense counsel occurred and each time the pleading process was begun anew. Clearly the State is not responsible for the delay in trial during this 2½ year period.
Concerning defendant's assertion of his right to a speedy trial, he argues that he should not be penalized for not asserting his right to a speedy trial while in Illinois since he was declared incompetent. We acknowledge that the defendant should not be penalized for failure to assert his right at such time that he was declared legally insane. Further, we acknowledge that Louisiana authorities were not excused from initiating measures reasonably calculated to return the defendant to Louisiana for trial merely because defendant was declared incompetent by Illinois physicians and incarcerated in that state. Smith v. Hooey, 393 U.S. 375, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). However, as aforestated, there is nothing in the record to indicate that the State of Louisiana was lax in its duty to extradite the defendant to Louisiana for trial and in any event, it cannot be denied that the defendant's actions in absconding from custody was the reason initially that any delay at all occurred. Finally, and most convincing of defendant's failure to jealously assert his right to a speedy trial, is the circumstance that following his extradition in early 1976 all delays in bringing this matter to trial are attributable to the defendant himself and during this almost 2½ year period he did not assert his right to a speedy trial *1201 until the day before trial at which time he filed a motion to quash.
The final area of inquiry in the speedy trial analysis is prejudice to the accused. Able counsel for the defense urges that the defendant was greatly impaired in the presentation of his defense because examining psychiatrists could not provide a diagnosis of his mental state at the time of the offense to the passage of time between the offense and the subsequent examination. Although we recognize that the passage of time probably adversely affected the viability of the accused's insanity plea, we conclude that it was the defendant's own actions not those of the State which resulted in any such impairment. Had the defendant remained in custody of the Louisiana authorities subsequent to the commission of the offense, he could have requested a sanity commission to ascertain his mental state at the time of the crime. Defendant was arrested on the night the crime was committed and indicted some 19 days later. Therefore, it is reasonable to assume that examining physicians could have ascertained defendant's mental condition at the time of the offense with some degree of reliability and certainty. It is not the State's responsibility that an accurate evaluation of defendant's mental health could not be obtained at the time the offense was committed, rather such difficulty is clearly attributable to the defendant's own actions in escaping from custody. Further, we observe, that as soon as the defendant was arrested in Illinois in January of 1973 he underwent numerous psychiatric evaluations. The fact that defense counsel failed to call the Illinois physicians to testify on behalf of the defendant is not chargeable to the State.
In summary, we conclude that several counterbalancing factors outweigh the seemingly inordinate delay between arrest and trial. First, the initial reason that defendant's trial was delayed was because he absconded from legal custody and so far as the record reflects, the defendant's whereabouts were unknown to Louisiana authorities until such time as he was extradited to Louisiana in the early part of 1976. Secondly, all of the delays in bringing the defendant to trial following his extradition to Louisiana are attributable to the defendant. Thirdly, at no time during the latter period which extended for a period of some 2½ years did the defendant once assert his right to a speedy trial except on the day before trial when he filed his motion to quash the indictment. Fourthly, the prejudice, if any, suffered by the defendant in the presentation of his defense of insanity was a result of the defendant's own action in absconding from custody and the failure of his counsel to call the Illinois examining physicians to testify in his behalf.
For the foregoing reasons, we find no merit in these assignments of error.
ASSIGNMENT OF ERROR NUMBER 2
Defendant contends that the trial court erred in denying his motion to quash the indictment alleging that the 1971 indictment returned against him were defective in that it was returned by a grand jury which systematically excluded women.
The U. S. Supreme Court in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) held that the procedure set forth in the 1921 Louisiana Constitution for empanelling jurors unconstitutionally excluded women, thereby, denying the defendant his constitutional right to trial by a jury of his peers. Subsequently, that Court determined in the case of Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975) that the holding in Taylor, supra, was not to be applied retroactively. Defense counsel avers that since the Taylor decision was decided four years prior to the defendant's trial and since the State had formal notice of the indictment's defectiveness via the defendant's motion to quash, the Taylor decision should be given full force and effect.
This contention is clearly without merit. In response to defendant's motion to quash the 1971 bill of indictment, the district attorney presented evidence of the accused's guilt before a newly-empanelled grand jury which met all constitutional standards. On *1202 April 13, 1978, this second grand jury returned a bill of indictment charging the defendant with aggravated rape, a violation of R.S. 14:42. The present prosecution is based upon this latter indictment. No motion to quash this second indictment was filed by the defendant, therefore, we find no merit in this assignment. See State v. Holiday, 337 So.2d 493 (La.1976).
ASSIGNMENT OF ERROR NUMBER 3
Defendant's final assignment of error concerns the alleged erroneous admission of "other crimes" evidence, which defendant asserts mandates a mistrial under the provisions of La.C.Cr.P. Art. 770.[2] The defendant urges that the erroneous admission of "other crimes" evidence occurred during cross-examination by the State of defendant's medical witness, Dr. Albert Fant, the testimony of which witness had been offered by defendant to establish his defense of insanity at the time of the commission of the offense.
On direct examination the defendant questioned Dr. Albert Fant, one of two physicians appointed by the court to evaluate the accused's mental condition. Pursuant to stipulation by the defense and prosecution, Dr. Fant was permitted to testify concerning the results of certain psychiatric examinations conducted by the defendant's court-appointed physicians in Illinois. In testifying, Dr. Fant made reference to the Illinois medical records which contained the diagnosis of defendant's mental state as given by a Dr. Leonard Horecker on July 28, 1973 which described the accused as suffering from chronic paranoid schizophrenia. Dr. Fant testified on direct examination that after reviewing all of the Illinois medical records regarding the defendant's mental condition, and various other medical records dating from the year 1963, and based upon his own examination of the accused, he agreed with the conclusion of Dr. Horecker. On cross-examination, the State used these reports to question Dr. Fant. Quoting from one of these reports, the prosecutor proceeded with the examination of Dr. Fant in the following manner:
"Q. Now, Doctor, after the lapse of seven years, we pick up on these records from Chicago again. In the beginning of these records, dated January 16ththe first page of these records. At the beginning of the first paragraph: When he was called from the waiting room he did not respond, but then later, slowly shuffled to the examining area. There was evidence of psychomotor retardation. His movements were quite slow as was his thought processes. Some questions he did not respond to at all.
Would these kinds of psychomotor problems, shufflingthis is 1973 now. What would this indicate to you, that there was a disease present, and that it had accelerated in its progress?
A. Yes, that would be consistent with the further progression of the illness.
Q. This was in 1973. Doctor, does thorazine and other medication given to people who have this disease, does that create these kinds of symptoms, the shuffling?
A. That does too, yes.
Q. It might be difficult to decide without knowing what kind of medication he was on at this time, whether these symptoms were from the medication, or from the disease, is that correct?
A. Yes.

*1203 Q. Or, from both. And, if you would continue on: Some questions he did not respond to at all: Others he responded to in a very low voice. He appears confused about why he was arrested, and claims he was arrested for unlawful possession of a weapon. He does not seem to recall any shooting of a weapon. He does not seem to recall any shooting incident, and specifically denies shooting the victim. Although, he is aware that it is a woman who was supposed to have been shot and killed." (Emphasis supplied)
The last question propounded to Dr. Fant makes reference to a direct quote from one of the reports which made reference to the accused's arrest, his unlawful possession of a weapon, his failure to recall any shooting of a weapon or shooting incident and the accused's denial of having shot the victim. Defendant contends that this reference to another crime was inadmissible, highly prejudicial and mandated the declaration of a mistrial which was timely requested by his counsel. For the reasons which follow we find no merit in this contention.
When a witness has been intentionally sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case. LSA-R.S. 15:280. The prosecution has the right to rebut the evidence adduced by the defendant, LSA-R.S. 15:282, and in such endeavor may cross-examine witnesses offered by the defendant as to any relevant or material issue. Relevant evidence is defined by LSA-R.S. 15:441 as follows:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
As we stated in State v. Constantine, 364 So.2d 1011 "the relevancy of proffered evidence thus depends on whether it tends to prove or disprove a material fact at issue".
Although it is settled law that generally evidence of extraneous offenses is inadmissible, La.C.Cr.P. Art. 770; State v. Herman, 358 So.2d 1282 (La.1978), it appears equally settled that matters which are relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses. State v. Constantine, supra; State v. Herman, supra; State v. Moore, 278 So.2d 781 (La. 1973).
One of the material and relevant issues before the jury in the instant case was the mental condition of the defendant at the time of the commission of the crime. Defendant, by the testimony of Dr. Fant and by use of the Illinois medical records, sought to establish his insanity at the time of the offense. The State in its efforts to rebut the effect of this direct evidence and in cross-examination of Dr. Fant made use of these same reports and made reference to particular portions thereof which Dr. Fant allegedly used as a factual basis for his ultimate opinion that he concurred with the diagnosis of Dr. Horecker. Under such circumstances we find the evidence clearly relevant to one of the central and material issues before the jury and, therefore, admissible in spite of the oblique reference to some other crime.
Further, we observed that he quote from the Illinois report employed by the State was largely exculpatory in nature and supportive of defendant's insanity defense. We discern no clear and substantial prejudice to the accused which may have resulted from the language contained in this report. For these reasons we find this assignment of error to be without merit.
For the foregoing reasons we affirm defendant's conviction and sentence.
AFFIRMED.
DIXON, C. J., dissents and assigns reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The direct reference to shooting and killing a woman in Illinois was placed before the jury by the prosecutor's reading from a report. It was unnecessary; it was wholly *1204 irrelevant to any issue in this case; it was highly prejudicial, almost making certain that the jury would convict this dangerous man, insane or not.
NOTES
[*] Judges E. L. Guidry, Jr., J. Burton Foret and P. J. Laborde, of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] This latter contention, urged for the first time on appeal, has not been timely raised. Under La.C.Cr.P. Art. 581, the right of dismissal based upon failure to commence trial, La.C.Cr.P. Art. 578, is waived unless urged via motion to quash filed prior to trial. See also, La.C.Cr.P. Art. 535.
[2] La.C.Cr.P. Art. 770 provides in pertinent part:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
. . . . .
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."