435 So.2d 557 (1983)
STATE of Louisiana
v.
Alvin Troy MACK.
No. 82 KA 0975.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
Writ Denied October 7, 1983.
*559 Ossie Brown, Dist. Atty., by Leila Withers, Asst. Dist. Atty., Baton Rouge, for plaintiff appellee.
Kathleen Richey, Asst. Public Defender, Baton Rouge, for defendant appellant.
Before COVINGTON, LANIER and ALFORD, JJ.
ALFORD, Judge.
Defendant, Alvin Troy Mack, was indicted by the East Baton Rouge Parish Grand Jury on September 16, 1981, for the August 29, 1981 second degree murder of Michael Smothers. La.R.S. 14:30.1. Trial was conducted less than a year later on Tuesday, September 7, 1982, through Friday, September 10, 1982. After deliberation, the jury returned a verdict of guilty as charged. In accordance with the punishment provided in La.R.S. 14:30.1, on September 17, 1982, the trial judge sentenced the defendant to be confined in the custody of the Secretary of the Department of Corrections for a period of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. On appeal defendant presents five arguments for the reversal of his conviction and sentence.[1]
The facts involved are essentially as follows. On August 28, 1981, after attending a high school football game, the defendant proceeded to a victory dance at the John G. Jones Masonic Temple on 12th Street in Baton Rouge. Subsequent to his arrival, Mack noticed that his friend Roy Walker was arguing with Perez Robinson, a friend of Michael Smothers. Although the witnesses are not unanimous on this point, it appears that when the defendant walked over to the spot of the argument, Smothers asked Mack if he wanted to fight. Defendant responded to Smothers' question by saying *560 he did not know how to fight. However, immediately upon walking away from Smothers, defendant turned to someone called "Dogman", armed himself with "Dogman's" pistol and proceeded back to the area where Walker, Robinson and Smothers were located.
Walking back up to Smothers, the defendant hit him on the head with the gun. There was testimony that the gun discharged at this time. Immediately thereafter the victim turned away from Mack running toward a street located in front of the Temple. At this point the defendant fired a single shot at Smothers' back from close range. The record reflects that seconds after the first shot, the defendant then gave chase to Smothers and fired another round at the victim's back. Once again this was from very close range. The defendant then returned to the Temple. Michael Smothers' body was found the next morning behind a house located a short distance from the place of the incident.
The coroner testified that the victim was shot twice in the back, once on the left side of the spine in the chest area, and once in the lumbar region slightly to the right of the spine. Dr. Landry, the coroner, calculated that the bullet entering the chest caused such internal hemorraging that Smothers died between ten and twenty minutes after being shot.
On September 2, 1981, after turning himself in to the police, the defendant was formally charged with manslaughter. At the police station, defendant was given his Miranda rights, acknowledged that he understood them, then signed a waiver of rights form. After being given his Miranda rights a second and third time, defendant gave a taped statement to the detectives present admitting his participation in the crime.
On September 16, 1981, the defendant was formally indicted by the Grand Jury for the second degree murder of Michael Smothers. After trial on the merits, Alvin Troy Mack was found guilty as charged and sentenced to life imprisonment. Defendant posits five arguments on appeal as to why his conviction and sentence should be reversed.

Argument No. 1 (Assignments of Error Nos. 1 and 2)
By these assignments, the defendant contends that the trial court erred in denying his two motions to quash the indictment based upon infringement of his right to a speedy trial.
Initially we note that the trial in this case was commenced well within the two-year period set out in La.C.Cr.P. art 578. Defendant was formally charged on September 2, 1981, for manslaughter and indicted on September 16, 1981, for second degree murder. The trial commenced on September 7, 1982.
In Louisiana every person is guaranteed the right to a "... speedy, public and impartial..." trial. La. Const. of 1974, art. I, § 16. Under the provisions of article 578 of the Louisiana Code of Criminal Procedure, the state has two years from the date of institution of prosecution to commence trial for this crime.
The right to a speedy trial attaches from the time defendant becomes an accused by arrest or actual restraint or by formal bill of indictment or information. State v. Bodley, 394 So.2d 584 (La.1981). The time limitation is suspended whenever the defendant files a preliminary plea or motion to quash until the court rules. In no instance, however, will the state have less than one year after ruling to commence trial. La.C.Cr.P. art. 580.
If the defendant files a motion for speedy trial, as in this case, the provisions of article 701(D) of the Code of Criminal Procedure apply.[2] This article provides in part:
After the filing of a motion for a speedy trial by the defendant, the time *561 period for commencement of trial of a felony ... shall be as follows:
(1) Trial of a defendant charged with a felony shall commence within one hundred twenty days of arraignment if he is continued in custody and within one hundred eighty days if he is not continued in custody.
Here, defendant turned himself in on September 2, 1981. He filed a Motion for Speedy Trial on September 15, 1981, in proper person. One was also later filed by his attorney. He was brought to trial on September 7, 1982. There were a total of five reassignments of the trial date. It was first set for January 11, 1982, but was cancelled when the state requested that the matter be transferred to another section because of internal changes within the district attorney's office. A status hearing was held on February 15, 1982, wherein the trial date was reset for June 9, 1982. That date was cancelled because the trial judge was scheduled to be on vacation.
The next two trial dates on June 17, 1982 and July 9, 1982, were cancelled at the request of the state over objection by defendant. On July 9, defendant filed a motion to quash the indictment based on denial of defendant's right to a speedy trial, which motion was denied by the trial court. The trial was reset for August 19, 1982, but was changed to September 7, 1982, at the request of Dr. Hypolite Landry, the coroner, because he had a conflict and could not be present for trial. On September 7, 1982, the matter came to trial.
Flexibility is the governing philosophy in determining whether or not delay constitutes denial of the right to a speedy trial. In determining whether defendant's constitutional right to a speedy trial has been violated, no fixed period of time is determinative. Rather, the conduct of both the prosecution and defense are weighed in light of four factors, including the length of delay, the reason for the delay, the defendant's assertion of his rights and the actual prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. James, 394 So.2d 1197 (La.1981).
In evaluating the facts in this case in light of the four factors delineated in James, we find that defendant was not denied his right to a speedy trial. The reasons for the delays were valid, in two instances beyond the state's control. The length of the delay was not in excess. Defendant was brought to trial almost within a year of his incarceration. Although defendant did assert his right early in the process, he failed to show any actual prejudice at either of the hearings. Although defendant argues in his brief on appeal that the delay cost him the ability to locate certain witnesses, he failed to show the relevancy of these witnesses. Indeed, at trial the issues in this case centered almost exclusively around the discovery of the true state of affairs at the victory dance. To this end, the defendant called numerous witnesses to give the defendant's version of the facts. The court is simply unable to see where one or two more witnesses would have aided defendant's case. As such, we think the defendant has failed to demonstrate any prejudice because of the delay in this case. Accordingly, these assignments of error lack merit.

Argument No. 2 (Assignment of Error No. 12)
In this assignment, the defendant contends the trial court erred in allowing the introduction of defendant's taped statement. Defendant asserts that the state failed to show the statement was made after a knowing and voluntary waiver of his privilege against self-incrimination.
Defendant claims that the police officers told him he was charged with manslaughter and that the maximum penalty he could receive would be seven years. On the basis of that assurance, defendant asserts that he made the statement in question. Otherwise, defendant argues he would not have given a statement.
The state counters that it met its burden of showing that defendant made a knowing, intelligent and voluntary waiver. The state *562 points out that police are required by La. Const. of 1974, art. I, § 13 and La.C.Cr.P. art. 218.1 to inform the defendant of why he is being arrested. The state asserts that the officers were merely carrying out their duties. The state further argues that the record reflects defendant is not illiterate or immature and fully consented to having his statement taped.
We note at the outset that the statement in question does not appear to be a confession. Defendant never admits killing the victim. It would more appropriately be termed an inculpatory statement. However, the rules governing the admissibility of confessions are applicable to admissions involving the existence of criminal intent or inculpatory fact. State v. McGraw, 366 So.2d 1278 (La.1979).
Before what purports to be a confession can be introduced in evidence, it must affirmatively be shown that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; State v. Gaskin, 412 So.2d 1007 (La.1982). Confessions are inadmissible if obtained by any direct or implied promises, however slight, or by exertion of any improper influence. State v. Jackson, 414 So.2d 310 (La.1982).
The issue is the meaning of "inducement", i.e. whether or not informing defendant of why he was arrested and the possible penalties constitute inducement. We think not. The officers testified that they made no promises to defendant but merely informed him of the possible penalties for manslaughter by reading out of the criminal code. The record established that defendant was advised of his Miranda rights three times and signed a waiver of rights form absolutely voluntarily.
The officers were in complete good faith. Because the officers were acting on the assumption that defendant would be formally charged with manslaughter, the statement's voluntariness cannot now be questioned simply because the grand jury indicted the defendant on second degree murder charges. The fact that the grand jury decided to charge defendant with second degree murder does not change the voluntariness of his statement.
Additionally, the admissibility of a confession is in the first instance a question for the trial court, and his conclusions relative to the voluntariness of the statement will not be overturned unless not supported by the evidence. Jackson, 414 So.2d at 312; Gaskin, 412 So.2d at 1010; State v. Vaccaro, 411 So.2d 415 (La.1982). Because we feel the trial court's determination relative to the voluntariness of the statement given by Mack was supported by the evidence, we reject this assignment of error.

Argument No. 3 (Assignments of Error Nos. 27 and 30)
In these assignments, the defendant asserts the trial court erred in allowing the state to replay, on rebuttal, the recorded statement made by the defendant and that the court erred in not granting defendant a new trial because of this error.
Generally, rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. La.R.S. 15:282; State v. Huizar, 414 So.2d 741 (La.1982). Such evidence may be used to strengthen the state's original case. The determination of whether evidence is rebuttal evidence, and therefore admissible, is an issue which is addressed to the sound discretion of the trial court. Huizar, 414 So.2d at 750.
As the defendant notes in his brief, in State v. Turner, 337 So.2d 455, 458 (La. 1976), the Supreme Court particularized two kinds of prejudice which may be sustained by a defendant through the admission in the state's rebuttal, evidence which should have been introduced during the state's case in chief:
(1) Since in Louisiana "the defendant is without right to rebut the prosecutor's rebuttal", La.R.S. 15:282, the defendant may be prejudiced by the denial to him of an opportunity to defend against new issues; and

*563 (2) The production of strong prosecution evidence in chief after the defendant rests his case may unfairly emphasize the prosecution's "rebuttal" evidence, contrary to the legislatively intended order of proof, La.C.Cr.P. art. 765(5), designed from ancient experience to assure fairness in our criminal trials.
However, the defendant readily admits only the second of the two possible modes of prejudice is operative in this case.
We do not think the playing of the taped statement on rebuttal improperly emphasized the state's rebuttal. The record reflects the tape was played during the state's case in chief. In his defense the defendant offered evidence which expressly challenged the assertions made in the statement. The tape was particularly meaningful when viewed against the testimony of defendant's girlfriend, who testified for the defense. She stated that she never saw defendant draw his gun. Yet, on the tape defendant admitted that he hit the victim on the head with the gun prior to the shooting and then shot in the direction of the victim twice. Additionally, the girlfriend testified that there were perhaps four or five other people fighting. However, defendant's tape does not seem to support this testimony. Moreover, there were other defense witnesses whose testimony differed from that stated in defendant's tape. Thus, the state was justified in using the tape to rebut the assertions made by the defense witnesses.
Finally, it is important to note that another reason why the trial judge allowed the playing of the tape on rebuttal was because the quality of the tape and the acoustics in the courtroom were poor. No doubt the trial judge was concerned (correctly) that some jurors may not have been able to discern the conversation on the tape the first time it was played. This was certainly within the discretion afforded the trial judge as envisioned by Huizar. Because we find the trial court had sufficient reason to have allowed the state to replay the tape on rebuttal, we reject these assignments of error.

Argument No. 4 (Assignments of Error Nos. 33 and 34)
By these assignments, the defendant argues the trial court erred in failing to grant his motions for a new trial and for a post verdict judgment of acquittal on the ground that the verdict was based upon insufficient evidence.
In reviewing a conviction via a motion for new trial and a post verdict judgment of acquittal based upon the alleged insufficiency of the evidence, the court is required to consider the evidence in the light most favorable to the prosecution and determine whether any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hoffer, 420 So.2d 1090 (La.1982).
The crime of second degree murder is defined in La.R.S. 14:30.1, in part, as follows:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; ...
The elements of the offense the state must prove are: (1) a killing of a human being occurred; (2) the defendant did the killing; and (3) the defendant had a specific intent to kill or inflict great bodily harm. Specific intent is a state of mind in which "the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). La.R.S. 15:445 provides as follows:
In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
The defendant asserts that the state failed to prove, beyond a reasonable doubt, that defendant was the person who fired the fatal shot which killed the victim. He *564 argues that there were other individuals present with guns including the victim. He also argues that the state failed to establish that the defendant had not acted in self-defense. In the alternative, defendant argues that this court should substitute a verdict of manslaughter, alleging that the state did not show specific intent on the part of defendant to uphold a second degree murder conviction.
The state asserts that there is more than sufficient evidence to support the jury's decision. We agree. The evidence of record is overwhelming on the critical facts. After his initial conversation with Smothers at the dance, the defendant admits (and the witnesses agree) that he obtained a gun from "Dogman". He walked back up to the victim and, apparently without provocation because it was so immediate, struck Smothers on the head with the gun held in his hand. At this point, Smothers turned and ran toward the street, thus placing his back towards the defendant. While Smothers was only a few feet away, Mack turned and fired a shot at the fleeing victim. Mack then ran to the street and fired another shot at Smothers from a short distance. The great weight of the evidence was to this effect, and we think that an application of the Jackson v. Virginia standard to these facts confirms the jury's decision.
The defendant argues that he did not fire the fatal shot because Smothers did not fall down immediately after being shot. We reject this argument. In truth, Smothers was found only a short distance away from the scene, really no more than a few feet from the Temple. The coroner testified that one of the wounds to Smothers was located right near the lower spine and would not have been fatal. The other wound was to the left lung and torso area. This was the fatal shot. However, Dr. Landry testified that this shot might not have resulted in death for some twenty minutes, depending upon the individual. As such, it is not improbable that the victim had enough strength to make it to the spot where he died, and we feel the jury would not be unreasonable in this assumption.
Additionally, we find little if any evidence to support the claim that defendant was acting in self-defense. Numerous witnesses testified and the defendant admitted that Smothers turned and ran after he was struck by the defendant. Mack was certainly not acting in self-defense when he pursued the victim and fired two shots at him.
In the final analysis, our function is not to review the facts and substitute our opinion for that of the jury's. Rather, we are limited to reviewing whether there is sufficient evidence to support the verdict, and we must do so in a light most favorable to the state. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. See also State v. Washington, 421 So.2d 887 (La.1982). We think that when the evidence is viewed in a light most favorable to the state, then it is certainly reasonable that a rational trier of fact could have concluded Mack was guilty of the second degree murder of Smothers. We agree with the jury's determination of guilt, and as such, we reject these assignments of error.

Argument No. 5 (Assignments of Error Nos. 8, 11, 16, 21 and 34)
By these assignments, the defendant argues that the manner in which the trial was conducted denied Alvin Troy Mack his right to a fair trial and effective assistance of counsel.
Defendant's trial took place over a three day period from September 7-9, 1982. On September 7, trial began at 10:00 A.M. and adjourned at 10:10 P.M. Defense counsel made a motion to recess and carry over the trial to the next day at 8:24 P.M. This motion was denied.
The decision as to whether to grant a recess is within the sound discretion of the trial court and will not be reversed in the absence of a showing of abuse. State v. Jones, 412 So.2d 1051 (La.1982); State v. Telford, 384 So.2d 347 (La.1980). While somewhat prolonged, the length of the trial on this date was not unduly long. There were several recesses throughout the day *565 totaling 2½ hours. Furthermore, defense counsel did not move for a recess until 8:24 P.M., after which trial continued for approximately only another 1½ hours. Also, the jury was dismissed even before this time, at 9:27 P.M., and allowed to go home. Under these circumstances, we do not feel that the trial judge abused his discretion in refusing to grant defense counsel's motion to recess.
On September 8, trial judge resumed the case at 10:31 A.M. and later adjourned it at 3:15 P.M. The court was actually in session for approximately only three hours during this period. Obviously, trial on this date was not unduly long. To the contrary, it was rather short.
On September 9, trial resumed at 7:50 A.M., and the jury retired for deliberations at 10:40 P.M. The jury continued deliberations until 1:50 A.M. (September 10, 1982) when they returned a verdict. Defendant argues that this length of service so fatigued the jurors that they were unable to give this matter their fair and impartial consideration. Defense counsel also argues the length of trial unfairly impeded her effectiveness.[3]
It should be noted, however, the defense counsel did not make a motion to recess at any time on this date. Accordingly, defendant cannot now complain that the length of trial was unduly long. Furthermore, matters pertaining to the conduct of trial are within the sound discretion of the trial court. La.C.Cr.P. art. 17; State v. Reeves, 263 La. 923, 269 So.2d 815 (1972). Although the length of trial on this date was long, we do not find that there has been any abuse of the trial judge's broad discretion in the instant case, particularly in view of the fact that defense counsel did not at anytime move for a recess, nor did the jurors themselves request a break after deliberations began.[4]
For the above and foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant filed thirty-seven assignments of error with this court, yet he briefed only eight and orally argued only two. In accordance with Rule 2-12.4 of the Uniform Rules of the Court of Appeal, we will consider only those assignments briefed or argued before this court. The assignments briefed and/or argued before the court raise five issues.
[2] Article 701(D) was amended September 10, 1982, however, language quoted was in effect at the date of trial.
[3] Defense counsel was eight and one-half months pregnant at the time of the trial.
[4] Although the defendant lists assignments of error numbers 11, 16 and 21 in his brief, they were neither addressed in the brief nor on oral argument and are thus considered abandoned.