GAUDIN, Judge.
Arthur P. Prestenback was convicted of the July 24, 1987 forcible rape of a woman jogger and sentenced to 20 years at hard labor without benefit of parole, probation or suspension of sentence. We affirm.
Prestenback does not strenuously argue that he was incorrectly identified or that his sentence was excessive. He does contend that the trial judge erred in allowing the prosecuting attorney to illegally question his wife about other crimes and to later make reference to them during closing arguments, all in violation of LSA-C. Cr.P. art. 770, section (2).
The victim testified that on the evening of the crime, she first noticed the man later identified as Prestenback while she was running past a telephone installed on the side of a Canal Villere supermarket building. Prestenback, the victim said, was complaining loudly to the operator, making *661 “... a lot of noise about losing quarters..."
Moments later, while the victim was resting, Prestenback approached and tried to start a conversation. The victim said she “felt uneasy” about Prestenback’s presence so she jogged off.
As the victim ran past a weeded area minutes later, she was accosted. She described the attack as follows:
“A man grabbed me from behind, put his left arm around my head and it was with such force that it took us off into the weeds at an angle to the right. And he told me, he says, don’t say a word and I won’t hurt you. And I knew there was people right there in the apartment complex, close by, and I knew there was people on the highway right there. And so I started screaming and fighting. Then he hit with such force that we were well out into the weeded area and I was still screaming and he threw me on the ground, and immediately straddled me. And at this time I was still screaming and he hit me in the mouth. And I still tried to scream and then he ... he kept hitting me in the mouth with both of his hands. And then after a while I ... I couldn’t breathe and so I was trying ... I was trying to breathe and trying to get out of it and he kept telling me, be quiet, be quiet and I won’t hurt you. And then I could no longer scream, my voice was gone and he was still holding me down. And with his left hand he ripped off my shorts. He told me, just let me do what I have to do and he ripped off my shorts and he’s holding me with his ... with his right hand and then he penetrated ...”
The victim stated that she could see her assailant clearly because of lights shining in his face. Approximately a month later, the victim spotted Prestenback in the Canal Villere shopping center and identified him as the rapist.
Prestenback’s wife was the first defense witness. She testified that her husband did not leave their matrimonial residence the night of July 24,1987. During cross examination, this colloquy occurred:
BY MR. CREDO (ASST. D.A.):
Q. Were you happy living with him (the accused) on the day the police came out to ask you about this rape?
A. Was I happy, he was already gone.
Q. Mm-hm.
A. I mean he was in jail, how could I be happy than that.
Q. Now, the reason you weren’t happy is because you had a black eye, didn’t you.
MR. SIERRA:
Objection, Your Honor. Could I approach the bench, Your Honor?
THE COURT:
Let the record reflect that the defendant was objecting to the question. And the objection was overruled.
MR. CREDO:
Q. You weren’t very happy on the day you talked to the police, with Mr. Pres-tenback, were you?
A. On that day?
Q. That day.
A. I ... really at that, that time, I was moving, so ... I
Q. Moving away from Mr. Presten-back?
A. No.
Q. Is this your signature mam?
A. Yes.
Q. Do you remember signing that form?
A. I sure did.
Q. Now, the question is, the reason you weren’t happy with Mr. Prestenback is because you had a black eye that day, is that right?
A. No.
Q. That’s not true?
A. No, I didn’t have a black eye, I had...
Q. Well what did you have? What injuries did you have that day, mam, if you say you didn’t have a black eye, what did you have?
A. I think I had a bruise around my nose area or something.
Q. Mm-hm. And how did you get that bruise?
A. How?
*662 Q. Yes mam.
A. My husband hit me.
Q. Ok. That wasn’t the first time?
A. Yes it was.
Q. Ok. Isn’t it a fact that you called the police to your house, at least twice prior to the time you talked to them on this day?
A. I really ... I don’t remember.
It is uncertain whether Prestenback moved for a mistrial during the unreported bench conference. There is no doubt defense counsel voiced an objection, which was overruled.
Appellant believes that he was seriously prejudiced by this inadmissible evidence of another crime, i.e., battery of his wife. He denied striking Mrs. Prestenback, although admitting that during an argument he had “... pushed her down on the sofa and she hit her nose.”
C.Cr.P. art. 770 provides:
“Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
“(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
“(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
“(3) The failure of the defendant to testify in his own defense; or
“(4) The refusal of the judge to direct a verdict.
“An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.”
Considering the facts particular to this case, we cannot say that evidence of the defendant’s violent nature was not sufficiently relevant to submit to the jury. While evidence of extraneous offenses is generally inadmissible, matters which have relevance should not be excluded merely because they show the accused was involved in other criminal activity. See State v. James, 394 So.2d 1197 (La.1981).
Once Mrs. Prestenback was sworn in and testified as an alibi witness, she subjected herself to cross examination on any relevant matter. See LSA-R.S. 15:280.
Evidence of other criminal acts by Pres-tenback — such evidence of his stealing money or driving an automobile while intoxicated — would not be permitted as such evidence would likely be offered only to portray the defendant as an evil person and to discredit him in the minds of the jurors. Evidence that he struck his wife in the face, however, at approximately the same time the woman jogger was repeatedly hit in the face, would be a relevant and meaningful insight into Prestenback’s behavior pattern and volatile nature. Relevant evidence, according to LSA-R.S. 15:441, is evidence tending to show the commission of an offense and the intent.
One of the required elements of forcible rape is the use of force or threats of physical violence. LSA-R.S. 14:42.1 describes forcible rape as:
“a rape committed where the anal or vaginal intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the act.”
Notwithstanding the victim’s testimony and the wording of R.S. 14:42.1, Presten-back suggests that the evidence of his wife’s facial injury caused the jury to convict him of forcible rape. The record reflects otherwise. Mainly, appellant was convicted because of the victim’s positive, straightforward identification. The victim earlier, just after the rape, had provided police with descriptive information that had resulted in a composite drawing of the at *663 tacker. This sketch closely resembles Prestenback. Other evidence supported the victim’s testimony.
If the testimony of the state’s witnesses was accepted by jurors over testimony of Prestenback and his wife, and clearly this was the case, then all of the elements of forcible rape were proven beyond a reasonable doubt. The jury’s guilty as charged verdict was by an 11 to one vote.
We are mindful of State v. Smith, 418 So.2d 534 (La.1982), cited by appellant, in which the Supreme Court of Louisiana reversed an armed robbery conviction because a mistrial was not ordered following the prosecutor’s reference to other crimes. The assistant district attorney said:
“Another thing, she doesn’t have a good memory about her criminal record, and she denies having ever been arrested for narcotics and about the St. Charles Parish ...” An objection was made and a mistrial requested.
The circumstances of Smith differ from Prestenback’s. Evidence of an arrest is undeniably inadmissible, and the defense attorney in Smith properly moved for a mistrial. Evidence of Prestenback’s “other crime,” hitting his wife in the face, was considered relevant enough by the trial judge to submit to the jury; furthermore, the record does not indicate whether a mistrial was asked for.
Regardless, a careful reading of the record does not convince us that evidence of Mrs. Prestenback’s black eye either contributed to the verdict or deprived the defendant of any substantial right. Presten-back gave an explanation for his wife’s injury, and she substantiated and agreed with his testimony. The jury apparently based its verdict on other evidence and testimony.
There are no errors patent. Presten-back’s conviction and sentence are affirmed.
AFFIRMED.