447 So.2d 570 (1984)
STATE of Louisiana
v.
Fred Gary HEATH.
No. 83 KA 0928.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Writ Denied April 13, 1984.
*572 Aubert Talbot, Dist. Atty., Napoleonville, for State.
Michael J. Matthews, Gonzales, for Fred Gary Heath, appellant.
Before PONDER, WATKINS and CARTER, JJ.
WATKINS, Judge.
Defendant, Fred Gary Heath, was indicted for the second degree murder of his roommate, John Wilson, on January 6, 1981, in violation of LSA-R.S. 14:30.1[1]. Defendant entered a plea of not guilty and not guilty by reason of insanity. After a trial by jury, defendant was found guilty of manslaughter. Defendant was sentenced to serve twenty-one years imprisonment at hard labor. He appeals his conviction and sentence, alleging eight assignments of error.
FACTS:
On January 9, 1981, the Ascension Parish Sheriff's Office received a missing person's report on defendant's roommate. Detective Alvin Stephens telephoned defendant and asked him to come down to the station to talk about the victim's disappearance. After speaking with detectives at the station, defendant signed a waiver of search form, permitting the police to search his mobile home for clues of the whereabouts of the victim. Defendant drove his automobile out to his home with Detective E.J. Hahn riding as a passenger. During the drive, defendant admitted to Detective Hahn that he had killed his roommate.
When they arrived at the home, defendant directed police to a shed under which the victim's body was buried. Defendant later gave police a written statement in which he admitted the killing. He stated that he and the victim had not fought, but they had emotionally upset each other and the victim had become depressed. He stated that he did not know why, but he killed the victim to put him out of his misery. After burying the body, defendant drove the victim's car to New Orleans, left it in a parking garage, and took a bus back home.
ASSIGNMENT OF ERROR NO. ONE:
Defendant contends that the trial court erred in denying his motion to suppress his confession, inculpatory statements and other evidence because they were obtained through police interrogation without prior advice of his right against self-incrimination, his right to remain silent and his right to counsel in violation of the Fifth and Sixth Amendments to the U.S. Constitution as set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as well as Article I, Sec. 13 of the 1974 Louisiana Constitution. Defendant argues that he was not given Miranda warnings before he made the oral inculpatory *573 statement to Detective Hahn enroute to his home, and as a result the subsequent written confession and other evidence obtained by the State are also inadmissible and should be suppressed as this evidence flowed or resulted from the original oral inculpatory statement made to Detective Hahn, and are inadmissible under the "fruit of the poisonous tree" doctrine enunciated in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Detective Hahn, however testified that he gave defendant the Miranda warnings prior to any questioning, when they first left the Sheriff's office in the defendant's car.
Before a confession can be introduced in evidence, the State has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. State v. Ordonez, 395 So.2d 778 (La.1981).
In this case, defendant does not raise the issue of the voluntariness of the confession, rather the issue is whether the oral inculpatory statement was made after defendant was informed of his Miranda rights.[2] We find this case distinguishable from State v. Menne, 380 So.2d 14 (La. 1980), U.S. cert. denied 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980), cited by defendant. Menne involved the question of whether the defendant was in police custody at the time an inculpatory statement was made. Here, we need not resolve the question of whether defendant was in custody at the time he made the statement to Detective Hahn, because we find that the remark was made after defendant had received, apparently comprehended, and decided not to invoke his Miranda rights.
Furthermore, we find this case factually distinguishable from Menne. In Menne, the defendant was requested to come down to the police station in connection with a murder investigation. The police officers had information that a weapon which Menne had previously owned was used in the murder. The officers told Menne that they believed he knew more about the murders than he was telling and never informed him that he was free to leave. Further, Menne made the statement to the officers before being informed of his Miranda rights. In this case, Detective Stephens testified that when he telephoned defendant and requested that he come down to the station this case involved nothing more than a routine missing person's report on defendant's roommate. Detective Stephens further testified that he informed defendant that any participation on his part was purely voluntary. Detective Hahn testified that defendant made the inculpatory statement after receiving the Miranda warnings.
In reviewing a ruling of the trial court based upon a ruling of fact, great weight is placed on the determination of the court below because the trial judge had the opportunity to observe the witnesses and weigh the relative credibility of their testimony. These findings will not be disturbed unless they are not supported by the evidence. State v. Loyd, 425 So.2d 710 (La.1982).
As noted by the trial judge, the issue on the motion to suppress was whether to believe the testimony of defendant or Detective Hahn. At the hearing on the motion to suppress, defendant contradicted himself by first denying that he signed the waiver of search form, then admitting he did so. The trial judge who heard the testimony and observed the demeanor of the witnesses decided that the testimony of Detective Hahn was more credible, and held that the defendant had been advised of his Miranda rights.
In view of the great weight accorded the determination of the trial judge and our *574 thorough review of the evidence, the trial court's ruling should not be disturbed.
The assignment of error is without merit.
ASSIGNMENT OF ERROR NO. TWO:
In this assignment of error, defendant contends that he was denied a speedy trial.
Defendant was indicted by the grand jury on March 17, 1981, following his arrest on January 9, 1981. The case was originally set for trial on July 27, 1982. Prior to the July 27 trial date, defendant filed several pre-trial motions, including two motions for continuance, and applied to the Louisiana Supreme Court for writs on the denial of his motion to suppress. On the date set for trial, the trial judge ordered that the matter be continued. After reviewing the record and a tape of the arraignment and plea, the trial judge determined that the minutes were not accurate. The minutes indicated that defendant entered a plea of not guilty when he in fact pleaded not guilty and not guilty by reason of insanity.
On August 9, 1982, defendant filed his first motion for a speedy trial. Trial had been set for September 13, 1982. On August 19, 1982, an order for appointment of a sanity commission was signed by the trial judge. On August 26, 1982, the trial judge signed an amended order annulling the previous order setting the trial for September 13, 1982, reasoning that the order was unclear because it failed to state the nature of the fixing. On August 23, 1982, defendant filed a motion to vacate the order appointing a sanity commission. On October 14, 1982, the trial judge rendered judgment finding a sufficient basis for appointing a sanity commission. Subsequently, defendant applied for writs on this issue to this court. On November 8, 1982, the writ was granted in part and denied in part.
On December 1, 1982, defendant filed his second motion for a speedy trial. The trial date was set for March 1, 1983 and defendant was ordered to report for a mental examination on February 14, 1983. The trial began on March 1, 1983.
The trial in this case was held within two years of the date of indictment. Therefore, there was no violation of LSA-C.Cr.P. Article 578 which requires trial of non-capital felony cases within two years from the date of institution of the prosecution.[3]
The right to a speedy trial is guaranteed by both the state and federal constitutions and attaches when an individual becomes an accused, either by formal indictment or bill of information or arrest and actual restraint. State v. Bodley, 394 So.2d 584 (La.1981). Louisiana has adopted the balancing test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in which the conduct of both the prosecution and defendant are weighed. The four factors to be considered are (1) length of delay, (2) reason for delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. State v. James, 394 So.2d 1197 (La.1981).
In this case, there was a twenty-six (26) month delay between arrest and trial of defendant. However, there was only a three month delay between defendant's second motion for a speedy trial and the commencement of the trial.
In examining the reason for the delay, we note that defendant's application for writs on the denial of his motion to suppress accounted for part of the eighteen (18) month delay between defendant's arrest and the first trial date. During the next eight month period, defendant delayed the trial by his opposition to the appointment of a sanity commission and his application for writs on this issue.
Defendant filed two motions for a speedy trial, thus asserting his right. However, the first motion was not filed until seven months before trial.
Finally, defendant has failed to show how any delay, not attributable to him, caused him anxiety and impaired his defense, thus prejudicing him.
*575 Further, we find no violation of LSA-C.Cr.P. Article 701, which provides that trial of a defendant charged with a felony and not in custody shall commence within one hundred eighty days unless just cause is shown. Here, trial was commenced within the time period after the second motion and there was just cause for the delay after the filing of the first motion.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. THREE:
In this assignment of error, defendant contends that there was not sufficient evidence to support the jury's finding him sane at the time of the offense. The jury rejected the verdict of not guilty by reason of insanity and returned a responsive verdict of guilty of manslaughter.
A legal presumption exists that a defendant is sane and responsible for his actions. LSA-R.S. 15:432. The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. LSA-C. Cr.P. Article 652. If the circumstances indicate that because of a mental disease or mental defect the defendant was incapable of distinguishing between right and wrong with reference to the conduct in question, the defendant shall be exempt from criminal responsibility. LSA-R.S. 14:14.
The standard of review applicable when a defendant pleads the affirmative defense of insanity and claims that there is insufficient evidence to support a finding of guilty beyond a reasonable doubt is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. State v. Roy, 395 So.2d 664 (La.1981); State v. Claibon, 395 So.2d 770 (La.1981).
In Louisiana, it is left to the factual determination of the jury to determine whether the defendant was capable of knowing right from wrong with regard to the conduct complained of, without specifying as a matter of law whether the defendant must know it to be "morally" or "legally" wrong. See: State v. Abercrombie, 375 So.2d 1170 (La.1979), U.S. cert. denied 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). All of the evidence, including both expert and lay testimony and conduct and action of the defendant, should be considered by the jury in determining sanity. State v. Liner, 397 So.2d 506 (La.1981).
In support of his insanity plea, defendant presented the testimony of Mrs. Nancy Rumage, a psychologist, and Drs. George Burke and Kenneth Ritter, both psychiatrists.
Mrs. Rumage testified that she examined defendant on four occasions, the first being February 5, 1981, less than a month after the offense. She testified that she performed psychological tests on defendant and the results showed that defendant was suffering from paranoid schizophrenia and was a strong suicide risk. It was her opinion that if defendant were having an episode he would not have known right from wrong at the time of the offense.
Dr. Burke testified that he saw defendant in May of 1978, over two years before the offense. He testified that his diagnosis was that defendant was suffering from depression and related physical disorders. He testified that while defendant exhibited some thinking disorders, he observed no evidence of paranoid schizophrenia or psychosis. Dr. Burke was of the opinion that defendant could distinguish right from wrong at the time of his examination.
Dr. Ritter testified that he saw defendant a total of ten times, the first being February 18, 1981. He testified that he observed psychosis in his examination of defendant and his diagnosis was that defendant was suffering from paranoid schizophrenia. It was Dr. Ritter's opinion that defendant did not know right from wrong at the time of the offense.
In rebuttal, the state presented the testimony of two psychiatrists, Drs. Therisita Jiminez and Dennis Franklin.
*576 Dr. Jiminez testified that she examined defendant only one time, on February 16, 1983. She testified that she found defendant to be very much in contact with reality and observed no psychosis in her examination. She testified that she disagreed with Dr. Ritter's diagnosis of paranoid schizophrenia. Dr. Jiminez was unable to render an opinion as to whether defendant knew right from wrong at the time of the offense.
Because he never examined defendant, Dr. Franklin could not render an opinion on whether defendant knew right from wrong. However, he did testify that he disagreed with the criteria used by Dr. Ritter for diagnosing paranoid schizophrenia and further stated that a person could suffer from psychosis and still know right from wrong.
Defendant also presented lay testimony in support of his insanity plea. His father and sister testified that although defendant did well in school while pursuing a degree in nursing, he changed schools five times over a four year period and finally dropped out one semester short of earning a degree. Testimony also showed that following a breakup with his fiancee in 1975, defendant attempted suicide by taking an overdose of pills.
The detectives who investigated the case testified that they observed no abnormal behavior by defendant, although Detective Hahn testified that defendant began to cry when he made the inculpatory statement. The victim's father, Thomas Wilson, testified that before filing the missing person's report on his son, he and his wife went to the mobile home where defendant and his son were residing. He testified that defendant appeared to be extremely nervous and told them that their son had left in the early morning hours a few days earlier taking his car and all of his belongings. Mr. Wilson also testified that when his wife went inside the trailer, defendant stood in the hallway between her and the victim's bedroom.
The record shows that defendant took several steps to conceal the crime including burying the victim's body, disposing of the victim's belongings, and driving the victim's car to New Orleans and leaving it in a parking garage. While Dr. Ritter testified that these actions were not inconsistent with his diagnosis, Dr. Jiminiz testified that they were inconsistent with the degree of psychosis described by Dr. Ritter.
As we noted, the jury is free to consider all of the evidence in determining a defendant's sanity. While Dr. Ritter testified categorically that defendant did not know right from wrong at the time of the offense, his testimony was refuted to a large degree by Drs. Jiminez and Franklin. Further, the jury could have concluded that the actions of defendant following the offense showed that he knew that his conduct was wrong.
We have reviewed all of the evidence, and viewing it in the light most favorable to the prosecution, we conclude that a rational trier of fact could have concluded that defendant failed to prove his insanity by a preponderance of the evidence.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. FOUR:
In this assignment of error, defendant contends that the trial court erred by continuing defendant's trial on its own motion.
On the date originally set for trial, it was discovered that the State was not aware of defendant's plea of not guilty and not guilty by reason of insanity. Although the minutes indicated that defendant pleaded not guilty, a tape of the arraignment verified that defendant had in fact entered a plea of not guilty and not guilty by reason of insanity. After discussing the matter in chambers with the District Attorney and defense counsel, the court ordered the trial continued. It appears that the court ordered the matter continued in order to appoint a sanity commission to examine defendant.
Matters pertaining to the conduct of trial are within the sound discretion of the trial court. LSA-C.Cr.P., Article 17; State v. Mack, 435 So.2d 557 (La.App. 1st Cir.1983). We do not find that the trial *577 court abused its discretion in granting the continuance of trial.
This assignment of error lacks merit.
ASSIGNMENTS OF ERROR NOS. 5 AND 6:
Defendant contends that the trial court erred in denying his motion for a new trial on the basis that there was insufficient evidence to find him guilty of manslaughter. Defendant was charged with second degree murder, and the jury returned a responsive verdict of manslaughter. He contends that there was no evidence of the "passion" element of manslaughter.[4] At trial, no objection was made by defense counsel to the jury instruction which included manslaughter as a responsive verdict. Further, in his requested special jury instructions submitted to the trial court, defendant requested an instruction on the responsive verdict of manslaughter.
Since defendant did not object to the jury instruction, which informed the jury that it could return a verdict of manslaughter, defendant cannot now complain that the evidence which would have supported a conviction of the offense charged did not support the lesser verdict chosen by the jury. See: State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982); U.S. cert. denied, ___ U.S. ___, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).
These assignments of error are without merit.
ASSIGNMENTS OF ERROR NOS. 7 AND 8:
In these assignments of error, defendant contends that the trial court erred in imposing an excessive sentence not supported by the pre-sentence investigation report and in utilizing improper criteria in the sentencing.
The trial judge provided thorough reasons for sentence in which he considered in detail all of the factors enumerated in LSA-C.Cr.P. Article 894.1. As the trial judge noted, defendant is a first offender. However, the record shows that the killing was committed without provocation. The actions of defendant in shooting the victim in the head with a shotgun while he slept can only be described as cruel and senseless. While the evidence does show that defendant suffers from emotional problems, his plea of insanity was rejected by the jury.
Although the jury returned a verdict of manslaughter, the trial judge considered that the evidence supported a verdict of second degree murder and we agree. There is no merit to defendant's contention that it was error for the trial court to consider the possibility of a conviction for the charge of second degree murder. See: State v. Roberts, 440 So.2d 816 (La.App. 1st Cir.1983).
Despite defendant's lack of a prior record, we do not consider the sentence imposed so grossly disproportionate to the crime as to shock our sense of justice. Therefore, we do not find the sentence excessive.
These assignments of error are without merit.
CONCLUSION:
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The indictment form does not cite the statute which defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or reversal of a conviction if the error or omission did not mislead the defendant to his prejudice. LSA-C.Cr.P. art. 464.

Defendant does not allege, nor do we find that he was prejudiced by the omission in the indictment of the citation of the statute violated. Therefore, although we find this to be error patent on the face of the record, it does not warrant reversal of the conviction.
[2] It is clear from the record that defendant was advised of his Miranda rights at the time he was placed under arrest at the site of his mobile home after he had made the statement to Detective Hahn, and prior to his written statement.
[3] Institution of prosecution means the finding of an indictment, or the filing of an information, or affidavit, which is designed to serve as to basis of a trial. LSA-C.Cr.P. art. 934(7).
[4] Defendant maintained he and the victim had not argued nor was he angry with the victim. Detective Hahn testified that defendant stated he was upset with the victim, and they had an argument when defendant discovered the victim planned to move. The shooting, however, took place later that night while the victim was asleep.