STATE OF LOUISIANA           \*           NO. 2022-K-0452

VERSUS                   \*

                             COURT OF APPEAL

NIESHA WILLIS             \*

                             FOURTH CIRCUIT

                         \*

                             STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 553-136, SECTION "C"
Honorable Benedict J. Willard, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*
(Court composed of Judge Daniel L. Dysart, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Annie Flanagan
Orleans Public Defenders
2601 Tulane Ave., Suite 700
New Orleans, LA 70119

     COUNSEL FOR RELATOR, NIESHA WILLIS

                             **WRIT GRANTED; JUDGMENT REVERSED**
                                     **SEPTEMBER 1ST, 2022**

DNA

DLD

TGC

This is a criminal case involving a charge of aggravated battery. Relator, Niesha Willis (hereinafter "Ms. Willis"), seeks review of the district court's May 31, 2022 judgement, which denied her Motion to Suppress her statement and the evidence seized from her person (hereinafter "Motion to Suppress"). For the following reasons, we grant the writ and reverse the judgment.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 13, 2022, the State of Louisiana (hereinafter "the State") charged Ms. Willis with aggravated battery in violation of La. R.S. 14:34[1] and alleged that "[Ms. Willis], on or about March 18, 2021, did commit a battery . . . with a dangerous weapon, to wit: a knife." Ms. Willis appeared for arraignment and entered a plea of not guilty on March 14, 2022. Subsequently, on April 5, 2022, Ms. Willis filed a Motion to Suppress, wherein she sought "[a]n order suppressing any and all statements [and] evidence . . . in this case obtained in violation of the federal and state constitutions, or the statutes of this state . . . ."

---

[1] Louisiana Revised Statutes 14:34 defines aggravated battery as "a battery committed with a dangerous weapon."

*May 31, 2022 Hearing on Motion to Suppress*

On May 31, 2022, the district court held a hearing on Ms. Willis' Motion to Suppress. The State called Sergeant Randy Walton (hereinafter "Sergeant Walton"), who testified that he was employed by the New Orleans Police Department (hereinafter "NOPD") in the Fifth District Property Crimes Division on March 18, 2021. Sergeant Walton stated that on that date, he "heard a broadcast for aggravated battery by cutting right where [he] was" and "[s]imultaneously . . . was flagged down by a group of females who pointed in the direction of a stabbing suspect." He testified that afterward he "rounded the corner and saw that suspect and detained her." Regarding why he detained Ms. Willis as soon as he saw her, Sergeant Walton testified that the only reason was that she had been pointed out by the group of women. Sergeant Walton stated that he "[b]riefly" spoke to the suspect, whom he identified at the hearing as Ms. Willis, when he first came into contact with her and noted that he thought she "had a pipe" but that she "complied with everything [and] dropped the pipe." In particular, Sergeant Walton explained that he told Ms. Willis that "[s]ome females pointed [her] out as a stabbing suspect" because he "always make[s] it a point to explain why [he is] stopping" someone. However, Sergeant Walton testified that he did not speak to Ms. Willis about her version of what happened.

Sergeant Walton testified that thereafter he "requested units" and that uniformed officers arrived at his request.[2] He explained that, upon the arrival of the unit, a "[p]latoon officer came and took over the investigation" as the primary investigating officer. Sergeant Walton identified that officer as Officer Jordan

---

[2] Sergeant Walton testified that he was not in uniform at the time.

Adderley (hereinafter "Officer Adderley")[3] and explained that upon Officer Adderley's arrival, Sergeant Walton "gave him the same gist . . . about what occurred and how [he] came into contact with [the suspect]." Additionally, Sergeant Walton testified that Officer Adderley was the one who wrote the incident report concerning this matter. However, Officer Adderley did not testify at the May 31, 2022 hearing.

Sergeant Walton's testimony is unclear as to whether he or Officer Adderley placed Ms. Willis in handcuffs.[4] Regardless, Sergeant Walton answered affirmatively when asked if Officer Adderley was still investigating the incident at the time Ms. Willis was arrested and whether Officer Adderley told Ms. Willis that he was investigating the matter when she was placed in handcuffs. Regarding what ensued after Ms. Willis was placed in handcuffs, the following colloquy occurred:

> Q.   And at the point that Ms. Willis was put in handcuffs, Officer Adderley patted Ms. Willis down?
>
> A.   He could have. I [cannot] speak for him.
>
> Q.   Officer Adderley reached inside her pocket?
>
> A.   Again, I [cannot] speak for any action he did.
>
> Q.   Well [O]fficer Adderley took a piece of evidence off of Ms. Willis.[5]
>
> . . . .

---

[3] The transcript of the May 31, 2022 hearing does not provide Officer Adderley's first name; but it appears elsewhere in the record.

[4] Sergeant Walton answered, "I believe so. Yes." when counsel for Ms. Willis asked Sergeant Walton, "[s]o Officer Adderley was the person who actually put Ms. Willis in handcuffs, correct? Or was that you?"

[5] In her writ application to this Court, which is discussed more fully throughout the Opinion, Ms. Willis explains that "[a]t some point. Officer Adderley conducted a search of Ms. Willis and seized the blade of a knife from inside of her pocket."

[A.]   [I am] unaware if he did or [did not].

. . . .

Q.   Ms. Willis said that the incident actually begun [sic] at a nearby convenience store; is that correct?

A.   Did she say that to me? I [do not] remember.

Q.   You [do not] remember that?

A.   No.

Q.   Officer Adderley actually went to that convenience store, are you aware?

A.   No.

Q.   [You are] not aware that anyone got any surveillance footage from that convenience store?

A.   No, [I am] not.

Additionally, Sergeant Walton stated that, at the time Ms. Willis was placed in handcuffs, Officer Adderley had only spoken to him and Ms. Willis. Sergeant Walton further testified that, at the time Ms. Willis was placed in handcuffs, neither he nor Officer Adderley had spoken to the women who had pointed Ms. Willis out as a suspect. When asked about his and Officer Adderley's conversations with any witnesses to the incident, Sergeant Walton testified as follows:

Q.   And you [did not] speak with any other witnesses?

A.   The group of females, I think I passed by the location where they were when I was leaving.

. . . .

Q.   Did you or Officer Adderley speak to any witnesses [other than the group of women]?

4

A.      I [cannot] speak for him. I did not.

. . . .

Q.      So you [do not] know what the [group of women] said at all about the incident?

A.      Other than them giving me a brief description of Ms. Willis and flagging me down and pointing, that was pretty much the extent of my interaction with them.

Q.      And [you are] unaware of Officer Adderley's interaction with them?

A.      Yes, because I left the scene afterwards.

Sergeant Walton was also unaware or could not recall that Ms. Willis claimed that she had problems with these women in the past; acted in self-defense; that the women attacked her; and that the women had thrown the pipe at her.

Counsel for Ms. Willis asked Sergeant Walton if he "perform[ed] [*Miranda*[6]] on Ms. Willis" when he spoke with her, and Sergeant Walton responded, "[n]o." Additionally, counsel for Ms. Willis inquired if Sergeant

---

[6] In *Miranda v. Arizona*, which is discussed more fully throughout this Opinion, the United States Supreme Court held:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966) (footnote omitted).

Walton knew who provided Ms. Willis with her *Miranda* rights, and he again answered, "[n]o." Counsel for Ms. Willis then asked Sergeant Walton whether he knew if Ms. Willis received her *Miranda* rights, and Sergeant Walton responded, "I [cannot] recall."

After Sergeant Walton's testimony, counsel for Relator argued that the State failed to prove that any statements made by Ms. Willis and the evidence seized from her person were constitutionally obtained. At the close of the hearing, the district court orally denied Ms. Willis' Motion to Suppress. On June 22, 2022, Relator filed a notice of intent, which the district court granted.

Subsequently, on July 5, 2022, Ms. Willis timely filed her writ application with this Court. Therein, Ms. Willis (hereinafter "Relator") explains that "[a]t some point, Officer Adderley conducted a search . . . and seized the blade of a knife from inside of her pocket. [She] was interrogated by NOPD Officer Jordan Adderley, and made a statement." Relator asserts that the district court erred by denying her Motion to Suppress. Specifically, Relator contends that the district court erred in denying her Motion to Suppress regarding any purported confession or statement she made because the State failed to produce evidence she received her *Miranda* warnings. Further, she asserts that the district court erred in denying her Motion to Suppress regarding any evidence seized from her person because the State did not produce evidence that Officer Adderley had justification to search her. Prior to considering the merits, we turn to the standard of review.

## STANDARD OF REVIEW

As this Court has explained, a district court has "great discretion when ruling on a motion to suppress[,]" and the district court's ruling "will not be disturbed absent an abuse of that discretion." *State v. Polkey*, 2020-0482, p. 3 (La. App. 4

6

Cir. 11/25/20), 310 So.3d 605, 608 (quoting *State v. Jones*, 2012-0438, pp. 6-7 (La. App. 4 Cir. 3/13/13), 119 So.3d 9, 15). "A [district] court's ruling on a motion to suppress . . . is entitled to great weight, because the [district] court has the opportunity to observe the witnesses and weigh the credibility of their testimony." *State ex rel. J.S.*, 2008-1401, p. 4 (La. App. 4 Cir. 2/18/09), 6 So.3d 904, 908 (citing *State v. Howard*, 2000-2405, p. 3 (La. App. 4 Cir. 4/11/01), 787 So.2d 404, 407; *State v. Johnson*, 1998-2544, p. 5 (La. App. 4 Cir. 11/17/99), 748 So.2d 527, 530).

However, a motion to suppress presents a mixed question of law and fact. *Polkey*, 2020-0482, p. 4, 310 So.3d at 608 (quoting *Jones*, 2012-0438, p. 7, 119 So.3d at 15). Accordingly, an "appellate court reviews the underlying facts [under] an abuse of discretion standard, but reviews conclusions to be drawn from those facts *de novo*." *Id.* If the facts are not in dispute, then an appellate court "must consider whether the trial court came to the proper legal determination under the undisputed facts." *Id. See also State v. Parker*, 48,339, p. 11 (La. App. 2 Cir. 10/9/13), 124 So.3d 516, 522 (citing *State v. Hemphill*, 41,526, p. 10 (La. App. 2 Cir.11/17/06), 942 So.2d 1263, 1271; *State v. Marshall*, 46,457, p. 6 (La. App. 2 Cir.8/10/11), 70 So.3d 1106, 1111).

## DISCUSSION

### *Motion to Suppress - Statement*

As noted previously, Relator contends that the district court erred in denying her Motion to Suppress regarding the statement she made to Officer Adderley. In her writ application she asserts that "the State failed to meet its burden to prove that [her] statement was constitutionally obtained" per La. C.Cr.P. art. 703(D) because "[n]o evidence was introduced by the State to demonstrate that [Relator]

7

was given *Miranda* warnings of any kind or that she knowingly and voluntarily waived those rights." Relator argues, therefore, that the district court's judgment must be reversed and that her statement must be suppressed.

Pertaining to motions to suppress statements, La. C.Cr.P. art. 703 provides, in pertinent part:

> B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.
>
> . . . .
>
> D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant . . . .

Additionally, La. R.S. 15:451 states that "[b]efore what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." Thus, at the hearing on the Motion to Suppress, the State bore the burden of proving the admissibility of Relator's statement. We turn to the law regarding statements made by those who are accused to determine whether the State satisfied its burden.

Regarding the free and voluntary nature of confessions and statements, both the Louisiana and United States Constitutions provide "procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 348 U.S. at 444, 86 S.Ct. at 1612. The Fifth Amendment of the United States Constitution establishes that no person "shall be compelled in any criminal case to be a witness against himself . . . ." In *Miranda*, the United States Supreme Court held "that the Fifth Amendment privilege is available outside of criminal court proceedings and

8

serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." 384 U.S. at 467, 86 S.Ct. at 1624. Further, in *Miranda*, the United States Supreme Court held that "[p]rior to any questioning, [a person who has been taken into custody or otherwise deprived of his freedom of action in any significant way] must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612. Concerning the "[r]ights of the [a]ccused," La. Const. art. I, § 13 (1974) states that "[w]hen any person has been arrested or detained in connection with the investigation or commission of any offense, he [or she] shall be advised fully of the reason for his [or her] arrest or detention, his [or her] right to remain silent, his [or her] right against self[-]incrimination, his [or her] right to the assistance of counsel and, if indigent, his [or her] right to court appointed counsel." *See also* La. C.Cr.P. art. 218.1.

In interpreting these laws, the Louisiana Fifth Circuit Court of Appeal has explained:

> Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove, beyond a reasonable doubt, that the defendant was first advised of his *Miranda* rights, that he voluntarily and intelligently waived them, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises.

*State v. Chester*, 2019-0363, pp. 30-31 (La. App. 5 Cir. 2/3/21), 314 So.3d 914, 944 (citing *State v. Loeb*, 2009-0341 (La. App. 5 Cir. 2/23/10), 34 So.3d 917, 924-25). *See also State v. Williams*, 2007-0700, p. 8 (La. App. 4 Cir. 2/13/08), 977

So.2d 1101, 1109 (quoting *State v. Butler*, 2004-0880, p. 4 (La. App. 4 Cir. 1/27/05), 894 So.2d 415, 418).

This Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Marzett*, p. 11 (La. App. 4 Cir. 6/9/10), 40 So.3d 1204, 1211 (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d 694). "A suspect is 'in custody' for *Miranda* purposes . . . when a reasonable person in the suspect's position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest." *State v. Barabin*, 2013-0334, p. 5 (La. App. 4 Cir. 9/11/13), 124 So.3d 1121, 1124 (quoting *State v. Watson*, 1999-1448, p. 19 (La. App. 4 Cir. 8/23/00), 774 So.2d 232, 242). "Custodial interrogation includes situations which fall short of an actual arrest but where the accused is questioned by the police in a setting which indicated that [the accused] has been deprived of his freedom of action in a significant way." *State v. Alford*, 29,343, p. 6 (La. App. 2 Cir. 5/9/97), 694 So.2d 1162, 1166 (citing *State v. Menne*, 380 So.2d 14, 16-17 (La. 1980)). The determination as to "whether a person has been taken into custody, detained or deprived of his freedom of action in a significant way is determined by an objective test on a case by case basis." *Id.* (citing *Menne*, 380 So.2d at 17). The test includes consideration as to "whether there was probable cause to arrest prior to questioning, whether the statements and actions of the police indicate an intent to hold or restrain the accused, whether the accused reasonably believed he was restrained[,] and the extent to which the investigation had focused on the accused." *Id.* (citing *State v. Thompson*, 399 So.2d 1161, 1165 (La. 1981); *State v. Womack*, 592 So.2d 872, 877 (La. App. 2 Cir. 1991)).

In the matter *sub judice*, Relator made her statement sometime after she was detained by Sergeant Walton. Though the record is unclear as to whether Relator made the statement after she was placed in handcuffs,[7] we find that a reasonable person in Relator's position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest, such that the situation rose to the level of a custodial interrogation. *See Barabin*, 2013-0334, p. 5, 124 So.3d at 1124 (quoting *Watson*, 1999-1448, p. 19, 774 So.2d at 242). Sergeant Walton's testimony indicates that the NOPD officers focused their investigation on Relator and intended to hold her based on the group of women pointing her out as a stabbing suspect. *See Alford*, 29,343, p. 6, 694 So.2d at 1166 (citing *Thompson*, 399 So.2d at 1165; *Womack*, 592 So.2d at 877). In particular, Sergeant Walton testified that he told Relator that "[s]ome females pointed [her] out as a stabbing suspect" to explain to her why he had stopped her; and, thereafter, Officer Adderley questioned Relator after Sergeant Walton notified him why he had stopped Relator. Sergeant Walton testified that he did not give Relator her *Miranda* rights and that he did not know if Relator ever received her *Miranda* rights. The State produced no evidence that Relator received her rights in compliance with *Miranda*. Because the State failed to prove that Relator received her *Miranda* rights prior to her making the statement, we conclude that the district court erred by denying Relator's Motion to Suppress regarding the statement.

---

[7] Sergeant Walton did not testify as to when Relator made the subject statement; and in her writ application Relator notes "[a]t some point. Officer Adderley conducted a search of Ms. Willis and seized the blade of a knife from inside of her pocket. Ms. Willis was interrogated by NOPD Officer [] Adderley, and made a statement."

***Motion to Suppress - Evidence***

In her writ application, Relator also asserts that the district court erred in denying her Motion to Suppress relating to the evidence seized from her person. In particular, Relator contends that "Officer Adderley did not have probable cause for [an] arrest and search" and that "Officer Adderley did not have a 'particularized and objective basis' to suspect that [she] was armed and dangerous." Regarding motions to suppress evidence, La. C.Cr.P. art. 703 provides, in pertinent part:

> A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
>
> . . . .
>
> D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of . . . any evidence seized without a warrant.

The record demonstrates that Officer Adderley seized evidence from Relator without a warrant. Therefore, we turn our consideration to whether the State met its burden of proving the admissibility of the evidence.

Both the United States and Louisiana Constitutions protect people from unreasonable searches and seizures. The Fourth Amendment to the United States Constitution, which is titled "Searches and Seizures; Warrants[,]" provides that people have the right "to be secure in their persons . . . against unreasonable searches and seizures" and that this right "shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Similarly, La. Const. art. 1, § 5, states:

12

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

This Court has explained that, based on these provisions, "a warrantless search and seizure is presumed to be unreasonable." *State v. Lockett*, 2012-1561, p. 9 (La. App. 4 Cir. 7/24/13), 120 So.3d 886, 891 (citing *State v. Bridges*, 2011-1666, p. 5 (La. App. 4 Cir. 11/28/12), 104 So.3d 657, 661-62). The State must demonstrate that a warrantless search falls within limited exceptions to the warrant requirement. *Id.* One such exception is a search that is incident to a lawful arrest, which is based on probable cause, and another exception is during an investigatory stop. *State v. Surtain*, 2009-1835, p. 7 (La. 3/16/10), 31 So.3d 1037, 1043.

In the matter *sub judice*, the transcript of the May 31, 2022 hearing does not contain any information pertaining to the actual, physical search of Relator and the recovery of the subject evidence. Instead, Sergeant Walton testified that he could not speak to the actions taken by Officer Adderley in obtaining the evidence:

Q.     And at the point that Ms. Willis was put in handcuffs, Officer Adderley patted Ms. Willis down?

A.     He could have. I [cannot] speak for him.

Q.     Officer Adderley reached inside her pocket?

A.     Again, I [cannot] speak for any action he did.

Q.     Well [O]fficer Adderley took a piece of evidence off of Ms. Willis.

A.     [I am] unaware if he did or [did not].

Given the lack of information, the State failed meet its burden of proving that this warrantless search fell within one of the exceptions to the warrant requirement, and the trial court did not possess a sufficient basis upon which to deny the Motion to Suppress regarding the evidence. Thus, the district court erred in denying Relator's Motion to Suppress regarding the seized evidence.

## DECREE

For the foregoing reasons, we grant the writ and reverse the district court's May 31, 2022 judgment, which denied Relator's Motion to Suppress her statement and the evidence seized from her person.

**WRIT GRANTED; JUDGMENT REVERSED**