SAVOIE, Judge.
Defendant, James Mills, was charged by bill of information with simple burglary of an inhabited dwelling, in violation of LSA-R.S. 14:62.2. Defendant pled not guilty and not guilty by reason of insanity. He waived his right to a trial by jury and was convicted as charged after a bench trial. Thereafter, the state filed a second bill of information charging that defendant, having previously pled guilty to simple burglary, was a habitual offender as set forth in LSA-R.S. 15:529.1. The trial court adjudicated defendant a habitual offender and sentenced him to serve ten years at hard labor. Defendant has appealed, urging the following assignments of error:
1. The court erred in admitting testimony by a police officer of a conversation between defendant and his accomplice which was initiated by the accomplice from police headquarters.
2. The court erred in denying defendant’s motion for a judgment of acquittal.
3. The court erred in permitting the State to inquire of its expert witness the number of occasions he had found a defendant charged with a property crime to be legally insane.
4. The court erred in finding defendant guilty of simple burglary of an inhabited dwelling.
5. The court erred in finding the defendant guilty despite evidence of legal insanity.
6. The court erred in denying defendant’s motion for a post verdict judgment of acquittal.
7. The court erred in finding defendant to be a habitual offender.
8. The court erred in imposing an excessive sentence.
Assignments of error one and three were not briefed on appeal and are considered abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4.
FACTS
On February 2, 1984, defendant and two accomplices, Michael Crain and Van Vogel, entered and ransacked the home of Michael and Melanie Craddock, located in Bogalusa, Louisiana. Vogel testified at trial that the three men stayed awake the entire night before, drinking beer, and that he took two amphetamine pills but did not see either of the other men do so. Apparently, at some time during the evening, Crain informed defendant that he had stolen a Ruger .44 handgun from defendant and sold it to Michael Craddock. The trio then formulat *152 ed a plan to break into and rob the Crad-docks’ home.
Melanie Craddock testified that she left the residence around 10:00 a.m. the morning of the incident. Testimony established that the Craddocks lived in a mobile home located in an isolated rural area. Soon thereafter, defendant drove Crain and Vo-gel to the isolated area and parked his vehicle approximately three hundred yards from the trailer, behind some woods which obscured the vehicle from view. After ascertaining that no one was present, Vo-gel forced open the lock, and they entered the residence.
Vogel testified they “pillaged” the trailer, looking for valuables, and each grabbed whatever he could. Vogel testified that he stayed inside approximately ten minutes, and Crain and defendant stayed about fifteen minutes. They then drove to defendant’s home where they unloaded the car and divided the items. Vogel took two guns, and the rest were left at defendant’s home.
The following day, defendant accompanied Vogel to W.E. Pinegar’s pawn shop in Mandeville, Louisiana, where Vogel sold several items of jewelry. The proceeds of this sale were divided between Crain and Vogel.
Michael Crain was arrested on February 6, 1984. Crain placed a telephone call to defendant from the sheriff’s office. Defendant was unaware that the call was initiated from a telephone equipped with a speaker so that the entire conversation could be monitored by Deputy Tobie Stewart. Defendant told Crain the items the police were looking for had been moved and would not be found at his home. Later that afternoon, a warrant was obtained and defendant’s home searched. Although none of the items taken in the burglary were found in his residence, defendant was arrested for the burglary.
Michael Craddock testified that on February 15, 1984, defendant called him and threatened to kill him if the charges were not dropped. Craddock further testified that defendant called him several times over the next few weeks and became angry when he found out the charges would not be dismissed.[1] On February 21, 1984, Crain, accompanied by defendant’s mother, returned several of the items to Michael and Melanie Craddock.
SUFFICIENCY OF THE EVIDENCE
By assignments of error two and four, defendant contends that the trial court erred in failing to grant his motion for a directed verdict of not guilty and in finding that the state had proved the elements of the offense.
Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode, by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in Article 60, which defines the offense of aggravated burglary. LSA-R.S. 14:62.2.
Defendant concedes that the entry into the Craddocks’ home was unauthorized. He argues, however, that he did not possess the requisite specific intent to commit a felony or theft because his sole purpose was to retrieve property that had been stolen from his home.
Initially, we note that the only witness who participated in the burglary and could, therefore, be expected to have some knowledge of defendant’s intentions did not indicate that defendant’s only intent was to retrieve stolen property. Vogel testified that defendant was interested in locating his gun, but he had not specifically indicated that was the purpose of the expedition.
Moreover, even if defendant desired only to regain possession of his pistol, the elements of burglary were proven. The testimony of defendant’s mother established *153 the fact that defendant was a convicted felon. In fact, defendant pled guilty to simple burglary before the same judge some five months prior, a fact of which the court could take note. See State v. Valentine, 397 So.2d 1299 (La.1981). In accordance with the terms of his probation, defendant turned control of his weapons over to his mother approximately five months before the instant offense. As a convicted felon, defendant’s possession of a firearm is itself a felony offense. La.R.S. 14:95.1. We do not find it necessary, therefore, to determine whether or not defendant might have been justified in seeking to regain possession of his property because he could not lawfully possess it.[2]
Viewing the evidence in the light most favorable to the prosecution, we find the state has proven beyond a reasonable doubt that defendant entered the dwelling of Michael and Melanie Craddock without authorization with the requisite specific intent. La.C.Cr.P. art. 821. These assignments of error have no merit.
INSANITY PLEA
By assignments of error five and six, defendant contends that the trial court erred in failing to return a verdict of not guilty by reason of insanity and by failing to grant his motion for a post verdict judgment of acquittal.
Defendant has an extensive history of medical problems. His medical records introduced at trial reveal that defendant had been admitted to a mental hospital on three occasions, in 1970, 1971 and 1972. His history reveals a pattern of violence and drug abuse, and he has previously been diagnosed as schizophrenic.
On advice of retained counsel, defendant’s mother sought psychiatric treatment for him soon after he was arrested for the instant charges. He was hospitalized for approximately six weeks. Since his release, defendant has continued to take medication and has visited a psychiatrist monthly.
Defendant presented the testimony of two psychiatrists, a psychologist, and his mother (a registered nurse) in support of his insanity defense. The state presented the testimony of two lay witnesses and offered the testimony of a psychiatrist in rebuttal. Defendant argues that the court should have found him not guilty by reason of insanity because a reasonable trier of fact could reach no conclusion other than that defendant was insane at the time of the commission of the offense.
A legal presumption exists that the defendant is sane and responsible for his actions. LSA-R.S. 15:432. Insanity is an exculpatory fact which constitutes an affirmative defense. La.C.Cr.P. art. 652; State v. Thompson, 429 So.2d 862 (La.1983). The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. La.C.Cr.P. art. 652; State v. Nealy, 450 So.2d 634 (La.1984); State v. Heath, 447 So.2d 570 (La.App. 1st Cir.), writ denied, 448 So.2d 1302 (La.1984). If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing right from wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility. LSA-R.S. 14:14. In reviewing a claim of insufficiency of evidence with regard to a defense of insanity, the Louisiana Supreme Court has applied the test set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense. State v. Nealy, supra; citing Moore v. Duckworth, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979).
Defendant first presented the testimony of Dr. Edward Thomas Frank, a psychia *154 trist who examined defendant upon his admittance to DePaul Hospital in New Orleans on May 11, 1984, approximately three months after defendant was arrested. Dr. Frank saw defendant three to four times a week during the six weeks defendant was hospitalized and continued to treat him after he was released. Defendant told Dr. Frank that his purpose in seeking medical treatment was to create an insanity defense. Dr. Frank diagnosed defendant as suffering from a schizoaffective disorder and opined that, given defendant’s extensive history of mental illness and the previous diagnoses of schizophrenia, in combination with his use of amphetamines, the defendant’s ability to distinguish between right and wrong would have been affected at the time of the burglary and he “probably” would not have had that ability. Dr. Frank further testified that the facts of this case, including defendant’s actions in driving the vehicle and parking several hundred yards away from the residence, which were presented to him hypothetically, possibly did show that defendant knew the difference between right and wrong at the time. Dr. Frank acknowledged that other psychiatrists might formulate a different determination of defendant’s ability to distinguish between right and wrong.
Defendant’s mother testified on his behalf and stated that defendant’s behavior around the time of the incident was disturbed and that he used amphetamines, was “just full of them all the time ... for about three or four years.... ” Although she admitted that defendant gave away his guns in September, 1983, when he was placed on probation, she stated that in her opinion defendant thought he had a right to go in and get his gun and that he was “egged on” to actually do so. Although Mrs. Mills testified her son was disturbed and, “I just don’t think he knew right from wrong most of the time,” at the time defendant was admitted to DePaul Hospital on May 11, 1984, she denied that he had problems “other than legal ones.” At the time of his hospitalization, Mrs. Mills was unable to describe any behavioral problems, and noted defendant sought voluntary commitment because, “[T]hey are trying to revoke his probation and his lawyer recommended that he admit himself to the hospital.”
Nancy Simms Rumage, a licensed psychologist, testified that defendant was not able to determine right from wrong at the time she saw him, but could not give an opinion for the date of the offense. The testimony of Ms. Rumage was based on a battery of tests she administered approximately three months after the offense. She related the results of an intelligence test which revealed defendant functioned within the “dull-average” range and indicated that a significant discrepancy which existed between his verbal and performance scores was probably due to extensive use of drugs in the past. A report prepared by Ms. Rumage indicated, however, that she found it difficult to set forth a diagnosis “in view of his motivation to get out of his court situation at the present time.”
Dr. Kenneth A. Ritter, a board certified psychiatrist, also testified on defendant’s behalf. Dr. Ritter examined defendant for approximately one and one-half hours on May 2, 1984, three months after the offense. Dr. Ritter found defendant to be a chronic paranoid schizophrenic who could not distinguish between right and wrong at the time of the examination because he was quite delusional. Dr. Ritter stated that defendant’s core problem is that he acted on his delusions. He testified that the fact that defendant was aware that he had been arrested and charged with a criminal offense was not incompatible with a determination that he was not able to tell right from wrong. Provided with a detailed hypothetical situation which paralleled the facts of the instant case, Dr. Ritter testified that defendant would not have been able to tell right from wrong because of these delusions. Specifically, defendant kept guns because of persecutory delusions that the Communists, the authorities and his former wife were against him and intended to persecute and harm him. Dr. Ritter acknowledged that the only corrobo *155 ration of the delusions defendant related were the diagnoses of his previous commitments and the delusional pattern established then. Dr. Ritter specifically found the capacity to plan and execute a crime does not indicate a person knows the difference between right and wrong if that person is operating under a delusion at that time. Finally, Dr. Ritter testified that the fact that defendant attempted to obtain dismissal of the charges by threatening the victim is no indication defendant did not think his actions were justified.
Dr. Albert DeVillier, a licensed psychiatrist, testified on behalf of the state. Dr. DeVillier examined defendant on September 6, 1984, seven months after the offense. Dr. DeVillier did not detect evidence of an organic deficit or severe thought disorders and found defendant was legally sane at the time of his examination. Dr. DeVillier was unable to state an opinion with regard to defendant’s legal sanity at the time of the offense. Dr. DeVillier was of the opinion, however, that schizophrenia is not a progressive disease and that defendant’s past mental history should not be considered in evaluating his current mental state. Dr. DeVillier specifically found that defendant was not delusional and was able to factually relate recent events in his life which occurred around the time of the burglary. One of the items Dr. DeVillier found helpful in evaluating defendant’s conduct was the fact that defendant was able to relate the incident to his mother immediately after the burglary. Dr. DeVillier further indicated the facts of the incident related by witnesses may produce a better opinion than psychiatric evaluation.
After careful review of the evidence presented, we find no error in the court’s refusal to direct a verdict of not guilty by reason of insanity. Drs. Ritter and Frank testified categorically that defendant did not know right from wrong at the time of the offense. This testimony was refuted to a large degree by Dr. DeVillier, who specifically rejected the core of the diagnoses of these doctors, that defendant was delusional. Further, although the record substantiates that defendant abused amphetamines, Brian Van Vogel testified he was with defendant the entire night and morning which preceded the burglary, and he did not see defendant ingest amphetamines, a prevailing factor in the hypothetical situations upon which Drs. Ritter and Frank concluded that defendant would not have been able to distinguish between right and wrong at the time of the offense. Finally, W.E. Pinegar testified that the man who accompanied Vogel to his pawn shop, identified as defendant by Vogel, appeared normal on the day after the burglary.
From the perspective of a layman, defendant’s actions do not appear to be the product of delusions or to evidence his legal insanity. Indeed, defendant’s desire to reclaim property stolen from him would seem to be the normal reaction of a victim, indicating that he was aware of the difference between right and wrong and that he felt it wrong of Michael Crain to steal and sell his property. While Dr. Ritter found defendant’s problems stem from his “acting on his delusions”, it appears that this incident was rooted more in the interest of self-help, rather than a “delusion” that his conduct was justified. The body of criminal law stands firmly behind the premise that those who engage in self-help are still accountable for their actions.
Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that defendant failed to prove by a preponderance of the evidence that he was unable to distinguish between right and wrong at the time of the incident. This assignment of error has no merit.
EXCESSIVE SENTENCE
By assignments of error seven and eight, defendant submits that the. trial court erred in imposing an excessive sentence.
In assignment of error number seven, defendant alleged that the trial court erred in finding that defendant was a habitual offender under the provisions of LSA-R.S. 15:529.1. In brief, defendant states only *156 that he strongly denies the multiple offender petition. Defendant does not set forth a specific allegation of error or legal issue, nor has he set forth a legal argument or citations of authority. Accordingly, this assignment presents nothing for us to review.
In assignment of error number eight, defendant argues that the trial court erred in imposing a sentence of ten years because he is mentally ill.
In imposing the instant sentence, the trial court before whom defendant pled guilty some four months before the instant offense, specifically noted it had considered the evidence of defendant’s mental problems. The court reiterated its position that defendant knew the impact of his actions at the time he committed the offense. The court opined that defendant had chosen to continue to abuse alcohol and drugs after he had been placed on probation, notwithstanding the resources and alternatives that had been offered and were available to him. The court felt obligated to impose a sentence which would be sufficiently long to impress defendant and others that this type of behavior is intolerable.
La. Const, art. 1, § 20 prohibits the imposition by law of excessive punishment. Accordingly, the Louisiana Supreme Court has held that imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional right against excessive punishment. Allegations of excessive punishment are subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). Given compliance with La.C.Cr.P. art. 894.1, a sentence will not be set aside as excessive in the absence of a manifest abuse of the trial judge’s wide sentencing discretion. State v. Nealy, supra. The penalty imposed must be so grossly disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Nealy, supra.
Under the circumstances, we are unable to say that the trial judge abused his discretion in sentencing defendant to a term of ten years imprisonment. The trial judge considered defendant’s prior mental problems and found them not to be mitigating herein. See State v. Nealy, supra. Rather, he believed that defendant was sane at the time of the offenses. He concluded that defendant, having previously pled guilty to the similar offense of simple burglary, was at risk to repeat his activities. Accordingly, we do not consider the penalty imposed to be so disproportionate to the crime committed as to shock our sense of justice. Hence, we do not find defendant’s sentence excessive.
For the above reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Defendant was charged with public intimidation as the result of these threats. These matters were consolidated for trial, and the court directed a verdict of not guilty of public intimidation.

. Defendant did not apply for a bill of particulars; therefore the state was not required to specify the manner by which it alleged defendant committed the offense.