SAVOIE, Judge.
Laura Marie Volquardts was charged by grand jury indictment with the second degree murder of her estranged husband, Earl Volquardts, Sr., in violation of LSA-R. S. 14:30.1. Defendant entered a dual plea of not guilty and not guilty by reason of insanity. Following trial by jury, defendant was convicted as charged. The trial court sentenced defendant to a term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Defendant brings this appeal, urging five assignments of error:
(1) The trial court erred by denying the defense challenges for cause of prospective jurors, Pamela (sic) Ortega, Gerald Bridges, and Michael Bergeron.
(2) The trial court erred by denying the challenge for cause of prospective juror, Duann McKenzie;
(3) The trial court erred by allowing the state to question Earl Volquardts, Jr., about a discussion he had with his father on the day before the instant shooting.
*499 (4) The verdict is contrary to the law and to the evidence.
(5) The trial court erred by denying defendant’s motion for post-verdict judgment of acquittal and for a new trial.
FACTS
During the early morning hours of July 15, 1987, Earl Volquardts, Sr., was shot in the head with a small caliber firearm as he lay sleeping on the living room sofa in the home of his son, Earl Volquardts, Jr. Vol-quardts died as a result of the gunshot wound. Suspicion focused immediately on defendant, the estranged wife of the victim, who was also visiting in her son’s home.
Earl Volquardts, Jr., testified that he awoke after hearing a firecracker-like sound, and found his mother standing over the victim, muttering, “Look what somebody did.”. A twenty-two caliber rifle, belonging to Earl, Jr., was found next to the living room sofa. Other family members and a medical expert testified that defendant was a paranoid schizophrenic who had been hospitalized for her condition on several occasions. Dr. Harold Conrad, a psychiatrist who treated defendant, testified that she had a preoccupation with guns and often paced her home at night with a flashlight and gun in hand.
Defendant took the stand on her own behalf, denying that she killed her husband. However, defendant admitted that she had threatened to kill her husband and, on one occasion, had shot at him to scare him. Defendant testified that, on the night of the instant homicide, she heard a noise and awoke to see “the front door closing and ... an arm with a jersey glove on the hand close the door.”
ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO:
By these assignments of error, defendant contends that the trial court erred by denying his challenges for cause of four prospective jurors, [Paula] Ortega, Gerald Bridges, Michael Bergeron, and Duann McKenzie.[1] In response to a leading question by the defense counsel, Ms. Ortega, Mr. Bridges, and Mr. Bergeron initially indicated that they were confused about the implication of defendant’s dual plea. Ms. McKenzie initially exhibited some confusion about defendant’s right to remain silent. After defendant’s attempts to have the prospective jurors excused for cause failed, all of them were excluded by peremptory challenges. Defendant exercised all of her peremptory challenges.
The purpose of the voir dire examination is to determine the qualifications of prospective jurors by testing their competency and impartiality and discovering bases for the intelligent exercise of cause and peremptory challenges. The trial court is vested with broad discretion in ruling on a challenge for cause, which ruling will not be disturbed absent a showing of abuse of that discretion. State v. Sims, 529 So.2d 454, 456 (La.App. 1st Cir.), writ denied, 532 So.2d 764 (La.1988).
When asked if they thought defendant was in effect admitting her guilt by pleading not guilty and not guilty by reason of insanity, Ms. Ortega, Mr. Bridges and Mr. Bergeron initially indicated affirmatively. Thereafter, the trial court instructed the jurors that defendant’s dual pleas were not mutually inconsistent and did not imply an admission of guilt. All of the initially confused prospective jurors indicated that they would be able to follow the law as instructed by the court.
Defendant challenged those three jurors on the ground that they would be unable to accept the law applicable to dual pleas. The trial court denied the challenges, finding that the jurors had been adequately rehabilitated.
During questioning, Ms. McKenzie testified that she would be affected by defendant’s failure to take the stand. She indicated that her feelings were based in part upon her opinion that, if accused of a crime, she would want to explain her side. *500 Upon further questioning, Ms. McKenzie related that she could put that opinion out of her mind and give the defendant a fair trial.
The prospective jurors’ initial responses in this case resulted from a layman’s lack of knowledge of the law. A challenge for cause is not warranted when a juror has volunteered an opinion seemingly prejudicial to the defense but subsequently, upon further inquiry or instruction by the court, has demonstrated the ability and willingness to decide the case impartially according to the law and to the evidence. State v. Bates, 397 So.2d 1331, 1334 (La.1981).
The totality of the voir dire examination of these jurors convinces us that there was no abuse of discretion by the trial court and no basis to sustain challenges for cause. These assignments of error lack merit.
ASSIGNMENT OF ERROR NUMBER THREE:
By this assignment of error, defendant contends that the trial court erred by allowing Earl Volquardts, Jr., to testify about statements made to him by the victim on the night of his death over defendant’s hearsay objection.
Earl, Jr., testified that the victim arrived at his home about 5:00 p.m. the night before the murder. Earl, Jr., and the victim drove to a used car lot to look at automobiles. While they were alone, the victim told Earl, Jr., that he did not feel comfortable around defendant any longer and did not want to stay at Earl, Jr.’s, house that night. In fact, he wanted to begin steps toward obtaining a divorce. This testimony was admitted without objection; any error with respect to its admission may be deemed to have been waived.
It was not until after the witness had fully revealed his conversation with the victim, through a substantial colloquy with the prosecutor, that defendant offered a hearsay objection. That objection was overruled by the trial court, after the state successfully argued that information about the victim’s communication with Earl, Jr., was admissible to show the victim’s state of mind a short time prior to his murder. In testimony which followed the hearsay objection, Earl, Jr., merely reiterated the victim’s plan to formally terminate his marriage to defendant.
If timely objection had been offered, the evidence should have been excluded. Although the state argued that the evidence should be treated as circumstantial evidence of the victim’s state of mind, the victim’s state of mind was not a fact at issue. See State v. Raymond, 258 La. 1, 245 So.2d 335, 339-340, cert. denied, 404 U.S. 805, 92 S.Ct. 101, 30 L.Ed.2d 38 (1971), and criticism thereof at 32 La.L.Rev. 353-355 (1972). The thrust of the statement is that the victim did not want to be with defendant. It does not show immediately antecedent circumstances explanatory of the killing. There is no suggestion of intent to communicate the divorce plans to defendant. Thus, this statement is to be contrasted with cases of a declaration of future intent offered to show that the intent was in fact carried out. Compare State v. Weedon, 342 So.2d 642, 645-647 (La.1977).
Although the disputed evidence was improperly admitted, in part, it had little prejudicial effect. It was truly cumulative of other properly admitted testimony. Through the testimony of various witnesses, it was established that the victim and defendant had experienced a marriage marred by violence and had not resided together for at least three years.
For the foregoing reasons, this assignment of error lacks merit.
ASSIGNMENTS OF ERROR NUMBERS FOUR AND FIVE:
By assignment of error number four, defendant contends that the instant verdict is contrary to the law and to the evidence. By assignment of error number five, defendant contends that the trial court erred by failing to grant his motion for post-verdict judgment of acquittal and his motion for new trial, wherein he urged that a new trial *501 should have been granted in the interests of justice.
Where the defendant’s motion for a new trial is based on Louisiana Code of Criminal Procedure article 851(5), allowing the trial court to consider the weight of the evidence, the granting or denial of a new trial is not subject to review by the appellate courts. La. Const. art. V, § 10(B); La.C.Cr.P. art. 858; State v. Richardson, 459 So.2d 81, 37 (La.App. 1st Cir.1984).
The proper procedural vehicle for raising the issue of sufficiency of the evidence is by a motion for post-verdict judgment of acquittal. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The standard set forth in Article 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Defendant argues that the state failed to establish that she is the perpetrator of the instant offense. We disagree. In this case, the jury was presented with two theories of the homicide: the state’s theory that defendant intentionally shot the victim and defendant’s theory that an unidentified assailant wearing a jersey glove inflicted the fatal wound.
The jurors obviously concluded that defendant’s version of the events immediately preceding the fatal shots was a fabrication designed to deflect blame from herself. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984).
The jury’s verdict reflected a reasonable construction of the events of the evening based upon the evidence viewed in the light most favorable to the prosecution. The evidence presented a documented history of discord between defendant, a paranoid individual, and the victim. Defendant’s past conduct included parading around her home at night while armed with a firearm and a flashlight. Defendant was observed standing over the victim’s body immediately after the fatal shots were fired. The gun used to shoot defendant was found on the floor nearby. There does not appear to be any other hypothesis which raises a reasonable doubt as to defendant’s guilt. Thus, we cannot say that a rational juror could not have voted to convict.
In the alternative, defendant contends that her conduct should be excused because she was legally insane at the time of the instant offense.
A legal presumption exists that a defendant is sane and responsible for his actions. LSA-R.S. 15:432; State v. Charles, 450 So.2d 1287, 1289 (La.1984). If the circumstances indicate that because of a mental disease or a mental defect, the defendant was incapable of distinguishing between right and wrong with reference to the conduct in question, the defendant shall be exempt from criminal responsibility. LSA-R.S. 14:14.
Insanity is an exculpatory fact which constitutes an affirmative defense. State v. Mills, 492 So.2d 150, 153 (La.App. 1st Cir.1986), writ denied, 499 So.2d 82 (La.1987). The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. LSA-C.Cr.P. art. 652.
The standard of review applicable when a defendant pleads the affirmative defense of insanity and claims that there is insufficient evidence to support a finding of guilt beyond a reasonable doubt is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. State v. Tuggle, 504 So.2d 1016, 1020 (La.App. 1st Cir. 1987); State v. Heath, 447 So.2d 570, 575 (La.App. 1st Cir.), writ denied, 448 So.2d 1302 (La.1984).
*502 When the defendant pleads not guilty and not guilty by reason of insanity, the determination of the defendant’s sanity at the time of the offense is a jury question. State v. Burton, 464 So.2d 421, 427 (La.App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985). All of the evidence, including both expert and lay testimony and conduct and action of the defendant, should be considered by the jury in determining sanity. Tuggle, 504 So.2d at 1020; Heath, 447 So.2d at 575.
Dr. Harold Conrad, a treating physician, testified that defendant is a paranoid schizophrenic, who denied hallucinating. Dr. Conrad was not asked to evaluate defendant’s condition at the time of the instant offense and offered no expert opinion. Defendant’s sister, Elizabeth Tryba, testified that defendant thought the victim was after her. However, defendant testified at trial, denying any role in the slaying of her husband.
The jury was free to consider all of the evidence in determining defendant’s sanity. The guilty verdict returned in this case indicates that the jury concluded that defendant was sane when she shot her husband. After reviewing the record, we believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that defendant failed to prove by a preponderance of the evidence that she was insane at the time of the offense.'
For the above reasons, these assignments of error are also without merit. Accordingly, we affirm defendant’s conviction and sentence.
AFFIRMED.

. In brief, defendant also mentions prospective juror, Janice Hebert, although she was not referenced in defendant’s assignments of error. However, we note that Ms. Hebert’s situation is indistinguishable from that of prospective jurors Ortego, Bridges and Bergeron.